UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

---

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
and   ALLSTATE   PROPERTY   &
CASUALTY INSURANCE COMPANY,

        Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
d/b/a SAGINAW SPINE AND PAIN,
MICHIGAN SPINE AND REHAB,
ASSOCIATED MEDICAL, INC.,
ASSOCIATED CHIROPRACTIC &
MEDICAL CENTER, and REHAB,
INC.; PROFESSIONAL HEALTH
SYSTEMS, LLC; HEALTH SYSTEMS,
INC.; UNITED WELLNESS CENTERS,
INC.; UNITED WELLNESS CENTER
OF DETROIT, PLLC; UNITED
WELLNESS CENTER OF FLINT,
PLLC; UNITED WELLNESS CENTER
OF LANSING, PLLC; CLEAR
IMAGING LLC; HORIZON IMAGING
LLC; ASSOCIATED SURGICAL
CENTER, P.C.; AMERICAN
SURGICAL CENTERS I, INC.;
AMERICAN SURGICAL CENTERS II,
LLC; WCIS MEDIA, LLC;
UHG MANAGEMENT, LLC; UNITED
WELLNESS CENTERS
MANAGEMENT, LLC; GREATER
MICHIGAN PROFESSIONAL
SERVICES LLC d/b/a MI PRO
CONSULTANTS; SCOTT P. ZACK,
D.C.; DAVID M. KATZ, D.C.; CORY J.

Civil Action No. 2:13-cv-15108
Hon. Victoria A. Roberts


**DEFENDANTS UHG,
UHG MANAGEMENT,
PROFESSIONAL HEALTH
SYSTEMS and AMERICAN
SURGICAL CENTERS II,
LLC'S CONCURRENCE IN
DEFENDANT CLEAR
IMAGING LLC'S MOTION
TO DISMISS AND
SUPPLEMENTAL
MOTION TO DISMISS**

MANN; YISROEL SIGLER; EVAN P.
SHAW; RON WALTZ; MAZIN K.
YALDO, M.D.; SILVO J. COZZETTO,
D.C.; VINCENT L. CELENTANO;
JOSEPH F. DESANTO; NICOLE F.
MARTINEZ; ANTHONY F.
SERENO; LOREN C. CHUDLER, D.O.;
JEFF S. PIERCE, D.O.; CHINTAN
DESAI, M.D.; and MICHAEL PALEY,
M.D.,

      Defendants.

| | |
|---|---|
| Jacquelyn A. McEttrick<br>SMITH & BRINK, P.C.<br>350 Granite Street, Suite 2303<br>Braintree, MA  02184<br>(617) 657-0114<br>jmcettrick@smithbrink.com<br>*Attorney for Plaintiffs* | Michael J. Lavoie (P32584)<br>Robin Luce Herrmann (P46880)<br>Debra A. Geroux (P50955)<br>Ziyad I. Hermiz (P72236)<br>BUTZEL LONG, a professional<br>corporation<br>150 w. Jefferson Suite 100<br>Detroit, Michigan 48226<br>(313) 225-7000<br>lavoie@butzel.com<br>luce-herrmann@butzel.com<br>geroux@butzel.com<br>hermiz@butzel.com<br>*Attorneys for Defendants Clear Imaging*<br>*LLC and Chintan Desai, M.D.* |

| | |
|---|---|
| Ben M. Gonek<br>Law Offices of Ben M. Gonek<br>500 Griswold, Suite 3500<br>Detroit, Michigan 48226<br>(313) 962-5210 (Office)<br>Ben@Goneklaw.com<br>*Attorneys for Defendants Universal Health Group, Inc. d/b/a Saginaw Spine and Pain Associated Medical, Inc., Associated Chiropractic & Medical Center, and Rehab, Inc., American Surgical Centers II, LLC; Associated Surgical Center, PC; UHG Management, LLC* | Dennis K. Egan (P29166)<br>Jovan Dragovic (P64578)<br>**KOTZ SANGSTER WYSOCKI, P.C.**<br>36700 WOODWARD AVE., SUITE 300<br>BLOOMFIELD HILLS, MICHIGAN 48304<br>(248) 646-1050<br>degan@kotzsangster.com<br>jdragovic@kotzsangster.com<br>*Attorneys for Defendants Health Systems, Inc., and Loren Chudler, DO* |
| Peter L. Arvant (P52809)<br>Stark Reagan, PC<br>1111 W. Long Lake Road<br>Troy, Michigan 48098<br>( 248) 641-9955<br>parvant@starkreagan.com<br>*Attorneys for Defendant Horizon Imaging* | Max R. Hoffman Jr. (P23199)<br>Aaron Davis<br>Fraser Trebilcock Davis & Dunlap, PC<br>124 W. Allegan, Suite. 1000<br>Lansing, MI 48933<br>mhoffman@fraserlawfirm.com<br>adavis@fraserlawfirm.com<br>*Attorneys for Defendants Scott P. Zack, DC, David M. Katz, DC and Cory J. Mann* |
| Deborah J. Michelson<br>Miller Goler Faeges Lapine LLP<br>1301 E. 9th Street, Suite 2700<br>Cleveland, OH 44114-1835<br>(216) 696-3366<br>Michelson@MGFL-law.com<br>*Attorneys for Defendant Michael Paley, MD* | James E. Waldvogel<br>Waldvogel Law Firm, PLLC<br>4000 Crooks Road, Suite 206<br>Royal Oak, Michigan 48073<br>(248) 246-1501<br>waldvogellaw.com<br>*Attorneys for Defendant American Surgical Centers I, Inc.* |

### DEFENDANTS UNIVERSAL HEALTH GROUP, INC., UHG MANAGEMENT, LLC, PROFESSIONAL HEALTH SYSTEMS, LLC'S CONCURRENCE IN DEFENDANT CLEAR IMAGING, LLC'S MOTION TO DISMISS AND SUPPLEMENTAL MOTION TO DISMISS

Defendants Universal Health Group, Inc., UHG Management, LLC, and Professional Health Systems, LLC, by their attorneys, Ben M. Gonek of the Law Offices of Ben Gonek, hereby move this honorable Court for dismissal of Plaintiff's Complaint. Defendants hereby concur with all factual and legal arguments set for in Defendant Clearing Imaging, LLC's Motion to Dismiss and submit this supplemental Motion to Dismiss based on Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). Defendants rely on the arguments contained within their attached Brief in support of this Motion.

Pursuant to LR 7.1(a), Defendants have sought Plaintiffs' concurrence in the relief requested in this Motion and such concurrence has been denied.

Wherefore, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

Dated: April 14, 2014

*/s/Ben Gonek*
Ben M. Gonek (P43716)
LAW OFFICES OF BEN GONEK
500 Griswold Street, Suite 3500
Detroit, MI 48226
(313) 962-5210

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

---

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
and ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY,

      Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
d/b/a SAGINAW SPINE AND PAIN,
MICHIGAN SPINE AND REHAB,
ASSOCIATED MEDICAL, INC.,
ASSOCIATED CHIROPRACTIC &
MEDICAL CENTER, and REHAB,
INC.; PROFESSIONAL HEALTH
SYSTEMS, LLC; HEALTH SYSTEMS,
INC.; UNITED WELLNESS CENTERS,
INC.; UNITED WELLNESS CENTER
OF DETROIT, PLLC; UNITED
WELLNESS CENTER OF FLINT,
PLLC; UNITED WELLNESS CENTER
OF LANSING, PLLC; CLEAR
IMAGING LLC; HORIZON IMAGING
LLC; ASSOCIATED SURGICAL
CENTER, P.C.; AMERICAN
SURGICAL CENTERS I, INC.;
AMERICAN SURGICAL CENTERS II,
LLC; WCIS MEDIA, LLC;
UHG MANAGEMENT, LLC; UNITED
WELLNESS CENTERS
MANAGEMENT, LLC; GREATER
MICHIGAN PROFESSIONAL
SERVICES LLC d/b/a MI PRO
CONSULTANTS; SCOTT P. ZACK,
D.C.; DAVID M. KATZ, D.C.; CORY J.

Civil Action No. 2:13-cv-15108
Hon. Victoria A. Roberts

**BRIEF IN SUPPORT OF
DEFENDANTS UHG, UHG
MANAGEMENT, PROFESSIONAL
HEALTH SYSTEMS and
AMERICAN SURGICAL CENTERS
II, LLC'S CONCURRENCE IN
DEFENDANT CLEAR IMAGING
LLC'S MOTION TO DISMISS
AND SUPPLEMENTAL
MOTION TO DISMISS**

MANN; YISROEL SIGLER; EVAN P.
SHAW; RON WALTZ; MAZIN K.
YALDO, M.D.; SILVO J. COZZETTO,
D.C.; VINCENT L. CELENTANO;
JOSEPH F. DESANTO; NICOLE F.
MARTINEZ; ANTHONY F.
SERENO; LOREN C. CHUDLER, D.O.;
JEFF S. PIERCE, D.O.; CHINTAN
DESAI, M.D.; and MICHAEL PALEY,
M.D.,

        Defendants.

| | |
|---|---|
| Jacquelyn A. McEttrick<br>SMITH & BRINK, P.C.<br>350 Granite Street, Suite 2303<br>Braintree, MA  02184<br>(617) 657-0114<br>jmcettrick@smithbrink.com<br>*Attorney for Plaintiffs* | Michael J. Lavoie (P32584)<br>Robin Luce Herrmann (P46880)<br>Debra A. Geroux (P50955)<br>Ziyad I. Hermiz (P72236)<br>BUTZEL LONG, a professional<br>corporation<br>150 w. Jefferson Suite 100<br>Detroit, Michigan 48226<br>(313) 225-7000<br>lavoie@butzel.com<br>luce-herrmann@butzel.com<br>geroux@butzel.com<br>hermiz@butzel.com<br>*Attorneys for Defendants Clear Imaging*<br>*LLC and Chintan Desai, M.D.* |

| | |
|---|---|
| Ben M. Gonek<br>Law Offices of Ben M. Gonek<br>500 Griswold, Suite 3500<br>Detroit, Michigan 48226<br>(313) 962-5210 (Office)<br>Ben@Goneklaw.com<br>*Attorneys for Defendants Universal Health Group, Inc. d/b/a Saginaw Spine and Pain Associated Medical, Inc., Associated Chiropractic & Medical Center, and Rehab, Inc., American Surgical Centers II, LLC; Associated Surgical Center, PC; UHG Management, LLC* | Dennis K. Egan (P29166)<br>Jovan Dragovic (P64578)<br>**KOTZ SANGSTER WYSOCKI, P.C.**<br>36700 WOODWARD AVE., SUITE 300<br>BLOOMFIELD HILLS, MICHIGAN 48304<br>(248) 646-1050<br>degan@kotzsangster.com<br>jdragovic@kotzsangster.com<br>*Attorneys for Defendants Health Systems, Inc., and Loren Chudler, DO* |
| Peter L. Arvant (P52809)<br>Stark Reagan, PC<br>1111 W. Long Lake Road<br>Troy, Michigan 48098<br>( 248) 641-9955<br>parvant@starkreagan.com<br>*Attorneys for Defendant Horizon Imaging* | Max R. Hoffman Jr. (P23199)<br>Aaron Davis<br>Fraser Trebilcock Davis & Dunlap, PC<br>124 W. Allegan, Suite. 1000<br>Lansing, MI 48933<br>mhoffman@fraserlawfirm.com<br>adavis@fraserlawfirm.com<br>*Attorneys for Defendants Scott P. Zack, DC, David M. Katz, DC and Cory J. Mann* |
| Deborah J. Michelson<br>Miller Goler Faeges Lapine LLP<br>1301 E. 9th Street, Suite 2700<br>Cleveland, OH 44114-1835<br>(216) 696-3366<br>Michelson@MGFL-law.com<br>*Attorneys for Defendant Michael Paley, MD* | James E. Waldvogel<br>Waldvogel Law Firm, PLLC<br>4000 Crooks Road, Suite 206<br>Royal Oak, Michigan 48073<br>(248) 246-1501<br>waldvogellaw.com<br>*Attorneys for Defendant American Surgical Centers I, Inc.* |

# TABLE OF CONTENTS

Statement of Issues Presented.................................................................................ii

Controlling Authority for Relief Sought ..............................................................iii

Index of Authorities..............................................................................................iv

Index of Exhibits ..................................................................................................vi

Introduction ...........................................................................................................1

Statement of Facts .................................................................................................3

Standard of Review ...............................................................................................5

Law and Analysis ..................................................................................................7

    A.  The McCarren-Ferguson Act Provides for Reverse Preemption
        of Allstate's RICO Claims ......................................................................7

        1.  RICO Does Not Specifically Relate to the Business
            of Insurance .....................................................................................8

        2.  Michigan's Insurance Code was Enacted Specifically to
            Regulate the Business of Insurance .................................................8

        3.  Michigan's Insurance Code Would be Invalidated,
            Impaired and/or Superseded if State Farm is
            Permitted to Proceed With Its RICO Claims.......................................8

    B.  Allstate's RICO Claims Are Not Recoverable Pursuant to
        Jackson v. Sedgwick .............................................................................9

    C.  Allstate Has Failed to Identify Specifically How Defendants
        Universal Health Care Group, Inc., UHG Management, LLC
        Professional Health Systems LLC and American Surgical
        Centers II, LLC, Conspired or Participated in the Affairs of an Enterprise ......10

    Conclusion ...................................................................................................14

## STATEMENT OF ISSUES PRESENTED

1.   Does the McCarren-Ferguson Act Provide for Reverse Preemption of Allstate's RICO Claims?

     Defendants' Answer: Yes

     Plaintiff's Answer:    No

2.   Given the Sixth Circuit's Decision in *Jackson v. Sedgwick*, Can Allstate Recover on Its RICO Claims?

     Defendants' Answer: No

     Plaintiff's Answer:    Yes

3.   Has Allstate Failed to Identify Specifically How Defendants Universal Health Care Group, Inc., UHG Management, LLC, Professional Health Systems LLC and American Surgical Centers II, LLC, Conspired or Participated in the Affairs of an Enterprise?

     Defendants' Answer: Yes

     Plaintiff's Answer:    No

## CONTROLLING AUTHORITY FOR RELIEF SOUHGT

1.  Does the McCarren-Ferguson Act Provide for Reverse Preemption of Allstate's RICO Claims?

    *Genord v. Blue Cross & Blue Shield*, 440 F.3d 802 (6th Cir. Mich. 2006)
    *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996)

2.  Given the Sixth Circuit's Decision in *Jackson v. Sedgwick*, Can Allstate Recover on Its RICO Claims?

    *Jackson v. Sedgwick Claims Mgmt. Inc.*, 731 F.3d 556 (6th Cir. 2013)

3.  Has Allstate Failed to Identify Specifically How Defendants Universal Health Care Group, Inc., UHG Management, LLC, Professional Health Systems LLC and American Surgical Centers II, LLC, Conspired or Participated in the Affairs of an Enterprise?

    *Beck v. Cantor Fitzgerald & Co.*, 621 F. Supp. 1547 (N.D. Ill. 1985)
    *Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick*, 726 F. Supp 1083 (E.D. Mich. 1989)

# INDEX OF AUTHORITIES

## CASES

*AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004) ................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..........................................................................6

*Ballan v. Upjohn Co.,* 814 F. Supp. 1375 (W.D. Mich. 1992) ........................................6

*Beck v. Cantor Fitzgerald & Co.*, 621 F. Supp. 1547 (N.D. Ill. 1985). ...........................11

*Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007) ..................................................................6

*Coffey v. Foamex L.P.,* 2 F.3d 157 (6th Cir. 1993) ................................................................6

*Genord v. Blue Cross & Blue Shield*, 440 F.3d 802 (6th Cir. Mich. 2006)...............................7, 8

*Gotham Print v. American Speedy Printing Ctrs.*, 863 F.Supp 447 (E.D. Mich. 1994) .................6

*Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,* 726 F. Supp 1083 (E.D. Mich. 1989 .................10

*Jackson v. Sedgwick Claims Mgmt. Inc.*, 731 F.3d 556 (6th Cir. 2013)...........................9

*Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996)...........................7

*Mayer v. Mylod,* 988 F.2d 635 (6th Cir. 1993)...........................................................5

*Manhattan Telecomms. Corp. v. DialAmerica Mktg.*, 156 F. Supp 2d 376 (2001).  ...................10

*Muci v. Plaintiff Mut. Auto. Ins. Co.*, 478 Mich. 178; 732 N.W.2d 88 (2007)..............................8

*United States Dep't of Treasury v. Fabe*, 508 U.S. 491 (1993)......................................................8

## STATUTES

15 U.S.C. §§ 1011, *et seq* ...............................................................................................7

15 U.S.C. § 1012(a) ...........................................................................................................7

15 U.S.C. § 1012(b) ...........................................................................................................7

18 U.S.C. § 1341 ...............................................................................................................9

18 U.S.C. § 1962(c) .................................................................................9, 10

18 U.S.C. § 1964(c) ........................................................................................9

MCL 500.3142(2) ...........................................................................................9

MCL 500.3148 ................................................................................................9

MCL 4501 *et seq* ............................................................................................9

## COURT RULES

Fed. R. Civ. P. 8..............................................................................................6

Fed. R. Civ. P. 9(b)..........................................................................................6

Fed. R. Civ. P. 12(b)(6) ...................................................................................5

## INDEX OF EXHIBITS

Opinion and Order Denying Motion to Dismiss, United States District Court,
Eastern District of Michigan, Southern Division, Honorable John Corbett O'Meara
Dated February 12, 2014, Case No. 12-11500 .................................................................Exhibit 1

# I. INTRODUCTION

This lawsuit is a preemptive strike by Allstate to avoid paying the Defendants $8,232,939.00 for reimbursement of claims submitted by the Defendants under Michigan's No Fault Act.   To evade paying these claims, Allstate has conjured up a lawsuit against the Defendants, containing 25 separate claims for relief.  The cornerstone of Allstate's complaint is the allegation that the Defendants conspired to form a criminal enterprise whose sole purpose was to defraud Allstate and other insurance companies.  The end result sought by Allstate is a determination by this Court that Allstate need not pay any money for *any* claim submitted by the Defendants, past, present or future.  Allstate, after garnering untold millions (or more) in auto insurance premiums in Michigan based on the No-Fault Act, now seeks to boost their profits even more by not paying legitimate claims from licensed health care professionals.

This lawsuit is ostensibly based on the assertions of Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company (collectively "Allstate") that the Defendants engaged in a massive conspiracy by submitting fraudulent medical billings for excessive and medically unnecessary treatments and/or testing over the past seven years.  Allstate paints the conspiracy as follows:  several companies, which employ hundreds of health care professionals, as well as individual doctors, lawyers and other professionals, have banded together for the sole purpose of defrauding Allstate and other insurers by making false No-Fault claims.  The doctors and health care providers involved have *refused* to properly treat patients for the last seven years, instead applying a "pre-determined protocol" which demands they treat each and every patient identically, regardless of the patient's injuries, so that the conspiracy can generate the maximum billable claims to submit for reimbursement.  Not only are these actions violations of the Hippocratic oaths taken by the doctors named as

1

Defendants in this alleged scam, but, if true, participation in this conspiracy also violates several rules of law and basic decency by all involved.   What Allstate has failed to inform this Court is that it has made nearly identical allegations on literally hundreds of occasions against entities employing thousands of health care professionals across the country. As alleged, these conspiracies, resulting in inadequate care for patients across the country, are quickly becoming a health care epidemic.  Allstate has attempted to convince dozens of state and federal courts to halt this epidemic by branding the health care professionals and any others allegedly involved in these widespread schemes as criminals and racketeers. As outlandish as these claims are factually, this Court need not address the merits of Allstate's apocalyptic Complaint.  This Court is required to dismiss the Allstate's Complaint because of its deficiencies as a matter of law.

Because Allstate's claims are based on Michigan's No-Fault Act, Allstate is prevented from seeking recovery on its civil RICO claims based on the doctrine of reverse preemption, allowing the individual states to manage insurance related issues.  Recent decisions have also dictated that the type of injury cited by the Allstate does not meet the statutory requirements of the RICO act.   In further support of dismissal, Allstate's entire Complaint falls short of the pleading requirements of Federal Rule of Civil Procedure 9(b) for the RICO claims because it contains nothing more than conclusory allegations which are unsupported by actual facts. Although Allstate has filed a bloated 230 page, 1677 paragraph, twenty-five count Complaint, requesting declaratory relief and asserting claims of fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations (RICO) statute, it has not stated a viable claim against Defendants Universal Health Group, Inc. d/b/a Saginaw Spine and Pain Associated Medical, Inc., Associated Chiropractic & Medical Center, and Rehab, Inc. ("UHG"), American Surgical Centers II, LLC

2

("American Surgical II"); Professional Health Systems, LLC ("Professional Health"), UHG Management, LLC ("UHG Management").

Defendants UHG, UHG Management, American Surgical II, and Professional Health hereby concur in the Motion for Summary Disposition filed by Defendant Clear Imaging, LLC, and adopt all factual and legal arguments contained therein and respectfully submit this supplemental Motion to Dismiss to this Court.

## II.  STATEMENT OF FACTS

Allstate has filed an extensive Complaint against a multitude of Defendants alleging that they conspired together and that "[t]he singular purpose of the defendants' scheme and network was to exploit Michigan's unlimited No-Fault benefits by generating as many bills as possible by doing as much treatment as possible." (Complaint, ¶ 10). Patients unfortunate enough to seek treatment from the Defendants "were merely pawns used to allow the defendants to set in motion their fraudulent scheme to bring in as many patients as possible and to subject the patients to a pre-designed protocol of treatment through a network of varied affiliated providers to reap the maximum amount of pecuniary benefit from Allstate and other Michigan auto insurers." (Complaint, ¶ 417). Thus, hundreds of medical professionals failed to do their jobs and completely disregarded the health care needs of their patients, instead focusing only on how they could use each individual patient to maximize the amount of money they could be reimbursed for from Allstate.

Allstate alleges that an extensive group of entities and individuals comprise this network and the hundreds of people involved work seamlessly together for "[t]he sole goal...to obtain as many patients as possible in order to generate the maximum number of bills submitted to Allstate and other auto insurers." (Complaint, ¶ 263).  One such named defendant and participant in the

3

scheme is Universal Health Group, Inc., ("UHG"), a Michigan corporation formed in 2007. (Complaint, ¶ 34).   Another defendant, Professional Health Systems, LLC ("Professional Health"), a Michigan limited liability company, was formed in 2012, and currently manages clinics operated by UHG.   (Complaint, ¶¶ 38, 42).   Another defendant/conspirator is UHG Management, LLC ("UHG Management"), which was formed in Michigan and also conducts business in Florida. (Complaint, ¶¶ 88, 89, 91). American Surgical Centers II, LLC ("American Surgical II"), a Michigan limited liability company formed in 1999, is also a named defendant and alleged conspirator. (Complaint, ¶ 78).   Though a separate entity, Allstate has lumped American Surgical II together with American Surgical Centers I, a Michigan Corporation, and refers to them as one entity in its Complaint. (Complaint, ¶¶ 77-83). Allstate recounts how these Defendants, along with the remaining Defendants, formed an enterprise which systematically solicited patients for the purposed of fraudulently billing Allstate for unnecessary and/or excessive medical tests and services.   Allstate claims this conspiracy has been ongoing since 2007 and that UHG is, essentially, the ringleader.

Allstate claims that medical providers in the alleged network provides a "strikingly similar course of treatment rendered to each patient....supporting that a predetermined treatment protocol (not tailored to the medical needs of each patient) was employed by the defendants." (Complaint, ¶ 19).   In other words, regardless of the type of injury each patient actually had, he or she would receive the same treatment as all the other patients of the health care center. Essentially, Allstate has claimed that a broken leg would be treated the same way as a back injury.

Allstate's Complaint alleges that UHG expanded and became the "umbrella entity" which "amassed these facilities as part of a design to mask the amount of treatment for which UHG

4

billed insurers, including Allstate, by having the medical records show a variety of seemingly independent facilities providing treatment." (Complaint, ¶¶ 186, 188).   The Complaint alleges that UHG followed a "fraudulent predetermined protocol" in order to bill Allstate for unnecessary and excessive tests and services. (Complaint, ¶¶ 1 and 5-18).  Allstate's Complaint alleges that "[more] than three-quarters of the patients at issue were treated at UHG (inclusive of its various assumed name facilities), as befits UHG's roles as the hub of the defendants scheme." (Complaint, ¶ 420).   The Complaint goes on to allege fraudulent medical and chiropractic treatment but fails to allege specifically how patients were treated improperly, but rather makes claims of how "excessive" or "unjustified" the treatments were.  The Complaint also documents 49 patients who were allegedly improperly treated, yet remarkably Allstate fails, in even one instance, to state what the proper medical treatment would have been.  Further, the Complaint does not contain any allegations that the actual injuries suffered by those patients were not actually treated. *Id.*

According to Allstate, Defendants and their hundreds of employees wake up each every day, not to provide health care for their patients, but rather to engage in a massive fraud to enrich themselves through the continual use of criminal means.  Allstate alleges that for seven years none of these health care professionals properly treated even a single patient but has provided no factual basis for these claims.

### III. STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the sufficiency of the complaint.   "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993). "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* at 679.

Further, pursuant to Fed. R. Civ. P. 9(b), there is a heightened pleading requirement for fraud. "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b)......To satisfy the requirements of Rule 9(b), a party must "'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the [the other party]; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.,* 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). This is especially true in the context of RICO claims:

> Courts have been particularly sensitive to Fed. R. Civ. Pro. 9(b)'s pleading requirements in RICO cases in which the "predicate acts" are mail fraud and wire fraud, and have further required specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme. *See, Berent v. Kemper Corp., supra; Bennett* v. *Berg,* 685 F.2d 1053 (8th Cir. 1982), *cert. denied,* 464 U.S. 1008 (1983); *Barker* v. *Underwriters at Lloyd's, London,* 564 F. Supp. 352, 356 (E.D. Mich. 1983). *See also, Otto* v. *Variable Annuity Life Ins. Co.,* 611 F. Supp. 83 (N.D. Ill. 1985), *aff'd in part, rev 'd in part,* 814 F.2d 1127 (7th Cir. 1986), *cert. denied,* 486 U.S. 1026 (1988), in which the district court found that the plaintiff failed to plead each defendant's involvement in the alleged fraud as required by Rule 9(b) and, therefore, dismissed the plaintiff's RICO Section 1962(c) count.

*Gotham Print v. American Speedy Printing Ctrs.*, 863 F.Supp 447; 458 (E.D. Mich. 1994).

As described below, Allstate has failed to meet the standard to survive this Motion to Dismiss.

## IV. LAW AND ANALYSIS

### A.   *The McCarren-Ferguson Act Provides for Reverse Preemption of Allstate's RICO Claims*

15 U.S.C. §§ 1011, *et seq.*, known as the McCarren-Ferguson Act, bars Allstate from bringing RICO claims against the Defendants.   The McCarren-Ferguson Act dictates that insurance "shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). This provision, combined with 15 U.S.C. § 1012(b), which provides that "[n]o act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance" unless that act "specifically relates to the business of insurance." 15 U.S.C. § 1012(b).   The Sixth Circuit has determined that the McCarren-Ferguson Act provides for "reverse preemption" in the insurance business and that "[a] general federal law that does not specifically related to the business of insurance, therefore, cannot be construed to 'invalidate, impair, or supersede" a state law enacted to regulate the insurance business." *Genord v. Blue Cross & Blue Shield*, 440 F.3d 802, 805, (6th Cir. Mich. 2006), citing *AmSouth Bank v. Dale*, 386 F.3d 763, 780-83 (6th Cir. 2004) and 15 U.S.C. § 1012(b).   In order to determine if the federal statute in question is subject to reverse preemption, a three prong test must be applied.   As explained by the Court in *Genord*:

> Pursuant to the Act, we are required to answer three questions. The threshold question is whether the federal statute at issue "specifically relates to the business of insurance." If it does, then the McCarran-Ferguson Act by its own terms does not allow for reverse preemption. *See* 15 U.S.C. § 1012(b) (setting forth as an exception to the reverse-preemption rule a case in which the federal law in question "specifically relates to the business of insurance"). If not, then there are two remaining questions that both must be answered in the affirmative in order to conclude that application of a federal law is reverse preempted by the existence of a state law. One is whether the state statute at issue was "enacted . . . for the

7

purpose of regulating the business of insurance." The other is whether the application of the federal statute would "invalidate, impair, or supersede" the state statute. *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 392 (6th Cir. 1996) (setting forth the McCarran-Ferguson Act analysis).

*Genord*, 440 F.3d at 805-806.

### 1. RICO Does Not Specifically Relate to the Business of Insurance

Although RICO provides relief for 35 "predicate offenses" it does not specifically relate to the business of insurance. The Sixth Circuit has held that "RICO does not specifically relate to the business of insurance." *Genord*, 440 F.3d at 806. Therefore, the first question indicates that reverse preemption is applicable to Allstate's RICO claims.

### 2. Michigan's Insurance Code was Enacted Specifically to Regulate the Business of Insurance

The Michigan Insurance Code is a comprehensive act, the purpose of which is stated in the preamble, which states that the Code is "[a]n act to revise, consolidate, and classify the laws relating to the insurance and surety business." Michigan Insurance Code, 1956 Mich. Pub. Acts 218. The Michigan Supreme Court has "without exception, emphasized the act's comprehensive nature." *Muci v. Plaintiff Mut. Auto. Ins. Co.*, 478 Mich. 178, 187; 732 N.W.2d 88 (2007). The United States Supreme Court has held that:

> [t]here can be no doubt that the actual performance of an insurance contract falls within the "business of insurance," as we understood that phrase in *Pireno* and *Royal Drug.*

*United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 503 (1993). Therefore, the second question indicates that reverse preemption is applicable to Allstate's RICO claims.

### 3. Michigan's Insurance Code Would be Invalidated, Impaired and/or Superseded if Allstate is Permitted to Proceed With Its RICO Claims

Michigan's Insurance Code expressly provides the burden a medical provider must meet in submitting a claim and relief for the submission of a false claim. *See*, Mich. Comp. Laws §§

8

500.3142(2), 500.3148 and 500.4501 *et seq*. Michigan's Legislature specifically contemplated violations of the Insurance Code and provided recourse for violations within the Insurance Code. If Allstate is permitted to proceed with its RICO claims, then it would have an avenue of recourse outside of that contemplated and provided by the Michigan legislature. Further, RICO provides treble damages, which would make it the preferred mechanism for potential plaintiffs to seek relief, leading to litigation of RICO claims in federal courts for what would otherwise be state court claims pursuant to Michigan's Insurance Code. This third and final question indicates that reverse preemption is applicable to Allstate's RICO claims.

**B.   *Allstate's RICO Claims Are Not Recoverable Pursuant to Jackson v. Sedgwick***

Allstate has alleged that Defendants have violated 18 U.S.C. § 1962(c), by submitting fraudulent medical bills in violation of the 18 U.S.C. § 1341, the federal mail fraud statute. (Complaint ¶ 278).  18 U.S.C. § 1964(c) provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in an appropriate United States district court…"  In *Jackson v. Sedgwick Claims Mgmt. Inc.*, employees of Coca-Cola who had been injured on the job were denied workers' compensation benefits by Sedgwick, the claims administrator.  The injured employees sued, claiming that Sedgwick, Coca-Cola and doctors employed by them, violated 18 U.S.C. § 1962(c), by utilizing the mail to fraudulently deny paying the injured workers benefits. *Jackson v. Sedgwick Claims Mgmt. Inc.*, 731 F.3d 556, 558 (6th Cir. 2013).

The Sixth Circuit, sitting en banc, ruled that because the plaintiffs were seeking recovery for workers' compensation benefits, their injuries were personal in nature, and were not injuries to "business or property" as required by the statute. *Id.* at 566.  The Court held that plaintiffs

9

were seeking damages which "reflect the pecuniary losses associated with the personal injury" and failed to meet the requirements of a proper RICO claim. *Id*.[1]

Allstate is claiming damages as a result of the Defendants' treatment of patients under Michigan's No-Fault Insurance Act. Each patient who was treated by the Defendant health care professionals was injured in an automobile accident. Any such injury is necessarily a "personal injury" and not damage to any "business or property" which is required under the RICO statute Allstate cannot properly use RICO to recover on their alleged damages because those alleged damages arise from personal injuries, not from business or property.

**C.    *Allstate Has Failed to Identify Specifically How Defendants Universal Health Care Group, Inc., UHG Management, LLC, Professional Health Systems LLC and American Surgical Centers II, LLC, Conspired or Participated in the Affairs of an Enterprise***

Allstate's Complaint, although lengthy, fails to articulate the necessary elements of a claim pursuant to 18 U.S.C. § 1962(c), which requires the Complaint contain "(1) a person (2) employed by or associated with (3) an enterprise engaged in or affecting interstate commerce (4) and such person conducts or participates, directly or indirectly, in that enterprise's affairs (5) through a pattern (6) of racketeering activity." *Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick*, 726 F. Supp 1083, 1087, n 8 (E.D. Mich. 1989). In determining if an enterprise exists, Allstate must allege that there is an enterprise that includes more than the named defendants. *Manhattan Telecomms. Corp. v. DialAmerica Mktg.*, 156 F. Supp 2d 376 (2001). The Complaint fails to specify the conduct of Defendants UHG, UHG Management, Professional Health and American Surgical Centers II as required.

If plaintiff cannot plead a separate, lasting enterprise apart from each defendant alleged to be liable under Section 1962(c) and ***specify the predicate acts and***

---

[1] The Honorable John Corbett O'Meara has issued an Opinion and Order which takes exception with this argument, which is attached hereto as Exhibit 1.

10 ·

> ***conduct of that enterprise by each allegedly liable defendant with particularity***,
> in separate counts, he has no business charging RICO violations.

*Beck v. Cantor Fitzgerald & Co.*, 621 F. Supp. 1547, 1563 (N.D. Ill. 1985).

As a preliminary matter, there are no separate allegations against Professional Health; it is conveniently melded to UHG by Allstate to form part of the "UHG/PHS conglomerate" apparently relieving Allstate from actually stating in its Complaint what it was that Professional Health actually did. Absent any specific allegation in the Complaint, Professional Health has literally "no business" being in this lawsuit and should be dismissed.

The allegations against American Surgical II are almost as sparse. First of all there, are no allegations specifically against American Surgical II; once again Allstate lumps two of the defendants, American Surgical Centers I and American Surgical II into one RICO handy entity, calling both entities merely "American Surgical" and making no specific claims against either entity. This pleading complacency, in and of itself, should merit dismissal of both entities. However, an examination of Allstate's allegations against the artificially combined companies demonstrates that the lumping mechanism is not legal laziness, but stems from sheer necessity, as Allstate has only a single claimed instance of malfeasance against either of the two American Surgical Centers. An examination of that isolated claim shows the weakness of Allstate's claims against not only American Surgical II, but the organic weakness of the entire Complaint.

The first and only claimed racketeering instance against "American Surgical Center" that Allstate describes in its complaint is described on pages 143 and 144. These two pages describe the treatment of "M.K.", who was involved in a motor vehicle accident on June 15, 2010. (Complaint ¶¶ 1269 - 1271). Allstate describes that "M.K received a series of three cervical medial branch blocks at the right C4-5, C5-6 and C6-7 on December 2, 2010, December 23, 2010 and January 6, 2011, all performed by Pierce." (Complaint ¶ 1272). Allstate tees up the

anticipation of the reader with the preliminary statement that "a series of medial branch blocks is highly unusual" (Complaint ¶ 1274); a "series" in this case being three in number.  Further, Allstate offers no alternative to the treatment that M.K. received.  Allstate then informs the court that M.K. reported that she still suffered pain after the injections (Complaint ¶ 1275).

One is still searching for the "crime" (for that is what Allstate has claimed these procedures are) when Allstate avers that Pierce (and apparently both American Surgical Centers) billed for an inappropriate number of "facet levels" during each of the three injections. Apparently, American Surgical submitted a bill to Allstate based on the number of needle injections (two for each procedure) rather than the number of actual procedures.

Allstate offers no guidance on how it came to this conclusion that billing must be done on a facet, rather than an injection level.  You would think they would elaborate on this fact, since failure to do so in even one instance is a literally a federal crime in Allstate's view.  Allstate does claim that it paid "American Surgical" $7300; however, Allstate does not inform us what (they believe) would have been the proper number.

It is clear that, even if Allstate is correct in their statements, what paragraphs 1269 through 1284 really describe is a *dispute over a single bill,* not a pattern of racketeering activity as required under both the statue and case law. Clearly American Surgical II (and for that matter American Surgical Centers I) should be dismissed from the lawsuit.

UHG Management gets even less space that American Surgical II in the Complaint. Excluding the paragraphs of the Complaint dealing with the formation, ownership and type of business it conducts, UHG Management is mentioned only in passing in paragraphs 1285, 1312 and 1313, 1319, 1327 and 1350.  Those paragraphs contain general statements regarding all Defendants' alleged management, knowledge and participation in the racketeering scheme.

12

UHG Management does even merit its own role in the drama as they are (once again) lumped in with several other named defendants as some type of criminal management consultant. In the 1362 paragraphs of background and facts, there is not a single mention of actual, specific wrongdoing by UHG. There also is not a single reference to anything specific that UHG Management did in furtherance of the "scheme", requiring that UHG Management be dismissed from the Complaint.

Allstate does spend a fair amount of time detailing the activities of UHG, attributing UHG center stage in much of the Complaint. However, even a thorough read of the Allstate tome does not leave the reader with much specificity against this Defendant. Allstate first alleges a relationship between UHG and WCIS Media but does not detail how that relationship is tied to the enterprise or how the relationship relates to the alleged pattern of racketeering activity:

It is unclear from the Complaint what this alleged relationship, if it even exists, has to do with the enterprise or UHG's alleged role in the enterprise. Allstate also alleges that Universal has a relationship with several personal injury law firms. Again, Allstate fails to connect these relationships to UHG's participation in the enterprise. The Complaint does not allege that WCIS Media assisted or engaged in the enterprise's fraudulent billing practices or mail fraud. It is not a predicate act for UGH to have a relationship with a company like WCIS Media, nor would the listing of UGH's clinic locations on a website maintained by that company be a predicate act under RICO.

The balance of the Complaint does detail specific allegations; however, these allegations are not against UHG, but against other individual and entities. Allstate then tries to tie UGH back in by alleging that these other entities were connected to UGH (UGH/PHS in the Allstte

13

parlance) and therefore these third party actions are attributed to UGH. At best, this analysis is little more that circular reasoning; in this case, the rationale fails to state a RICO claim.

## V. CONCLUSION

Wherefore, Defendants Universal Health Group, Inc., UHG Management, LLC and Professional Health Systems, LLC and American Surgical Centers II, LLC respectfully request that this Court enter an order dismissing Plaintiffs' Complaint in its entirety.

Respectfully submitted,

Dated: April 14, 2014

/s/Ben M. Gonek
Ben M. Gonek (P43716)
LAW OFFICES OF BEN GONEK
500 Griswold Street, Suite 3500
Detroit, MI 48226
(313) 962-5210

## CERTIFICATE OF SERVICE

Ben M. Gonek hereby states that on the 14th day of April, 2014, he caused the foregoing Motion to be filed electronically with the United States District Court and that copies of said motion were forwarded to all counsel of record using the ecf system.

/s/ Ben M. Gonek
Ben M. Gonek (P43716)

14