UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
and ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY,

      Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
d/b/a SAGINAW SPINE AND PAIN,
MICHIGAN SPINE AND REHAB,
ASSOCIATED MEDICAL, INC.,
ASSOCIATED CHIROPRACTIC &
MEDICAL CENTER, and REHAB, INC.;
PROFESSIONAL HEALTH SYSTEMS,
LLC; HEALTH SYSTEMS, INC.;
UNITED WELLNESS CENTERS, INC.;
UNITED WELLNESS CENTER OF
DETROIT, PLLC; UNITED WELLNESS
CENTER OF FLINT, PLLC; UNITED
WELLNESS CENTER OF LANSING,
PLLC; CLEAR IMAGING LLC;
HORIZON IMAGING LLC;
ASSOCIATED SURGICAL CENTER,
P.C.; AMERICAN SURGICAL CENTERS
I, INC.; AMERICAN SURGICAL
CENTERS II, LLC; WCIS MEDIA, LLC;
UHG MANAGEMENT, LLC; UNITED
WELLNESS CENTERS MANAGEMENT,
LLC; GREATER MICHIGAN
PROFESSIONAL SERVICES LLC d/b/a
MI PRO CONSULTANTS; SCOTT P.
ZACK, D.C.; DAVID M. KATZ, D.C.;
CORY J. MANN; YISROEL SIGLER;
EVAN P. SHAW; RON WALTZ; MAZIN
K. YALDO, M.D.; SILVO J. COZZETTO,

Civil Action No. 2:13-cv-15108
Hon. Victoria A. Roberts

D.C.;   VINCENT   L.   CELENTANO;
JOSEPH  F.  DESANTO;  NICOLE  F.
MARTINEZ;  ANTHONY  F.  SERENO;
LOREN  C.  CHUDLER,  D.O.;  JEFF  S.
PIERCE,  D.O.;  CHINTAN  DESAI,  M.D.;
and MICHAEL PALEY, M.D.,

        Defendants.

_____/

## DEFENDANT CLEAR IMAGING, LLC'S
## MOTION TO DISMISS THE COMPLAINT

Defendant Clear Imaging, LLC, by its attorneys, Butzel Long, a professional corporation, move for dismissal of the Complaint pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant relies on the arguments and legal authority set forth in its Brief filed in support of this Motion.

Concurrence of counsel in the relief requested herein, was sought on April 14, 2014, pursuant to E.D. Mich. L.R. 7.1(a), but concurrence was denied. Hence it was necessary to file this motion.

WHEREFORE, Defendant respectfully requests that this Court enter an order dismissing the Complaint in its entirety pursuant to Rules 8(a)(2), 9(b) and 12(b)(6).

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:/s/ Michael J. Lavoie
    Michael J. Lavoie (P32584)
    Robin Luce Herrmann (P46880)
    Debra A. Geroux (P50955)
    Ziyad I. Hermiz (P72236)
150 W. Jefferson Ave., Suite 100
Detroit, Michigan  48226
(313) 225-7000
lavoie@butzel.com
luce-herrmann@butzel.com
geroux@butzel.com
hermiz@butzel.com
*Attorneys for Defendant Clear Imaging LLC*

Dated:  April 14, 2014

1462418.1

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY;
and ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY,

   Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
d/b/a SAGINAW SPINE AND PAIN,
MICHIGAN SPINE AND REHAB,
ASSOCIATED MEDICAL, INC.,
ASSOCIATED CHIROPRACTIC &
MEDICAL CENTER, and REHAB, INC.;
PROFESSIONAL HEALTH SYSTEMS,
LLC; HEALTH SYSTEMS, INC.;
UNITED WELLNESS CENTERS, INC.;
UNITED WELLNESS CENTER OF
DETROIT, PLLC; UNITED WELLNESS
CENTER OF FLINT, PLLC; UNITED
WELLNESS CENTER OF LANSING,
PLLC; CLEAR IMAGING LLC;
HORIZON IMAGING LLC;
ASSOCIATED SURGICAL CENTER,
P.C.; AMERICAN SURGICAL CENTERS
I, INC.; AMERICAN SURGICAL
CENTERS II, LLC; WCIS MEDIA, LLC;
UHG MANAGEMENT, LLC; UNITED
WELLNESS CENTERS MANAGEMENT,
LLC; GREATER MICHIGAN
PROFESSIONAL SERVICES LLC d/b/a
MI PRO CONSULTANTS; SCOTT P.
ZACK, D.C.; DAVID M. KATZ, D.C.;
CORY J. MANN; YISROEL SIGLER;
EVAN P. SHAW; RON WALTZ; MAZIN
K. YALDO, M.D.; SILVO J. COZZETTO,

Civil Action No. 2:13-cv-15108
Hon. Victoria A. Roberts

D.C.;   VINCENT   L.   CELENTANO;
JOSEPH   F.   DESANTO;   NICOLE   F.
MARTINEZ;   ANTHONY   F.   SERENO;
LOREN   C.   CHUDLER,   D.O.;   JEFF   S.
PIERCE, D.O.; CHINTAN DESAI, M.D.;
and MICHAEL PALEY, M.D.,

        Defendants.

_____/

## BRIEF IN SUPPORT OF DEFENDANT CLEAR IMAGING, LLC'S
## MOTION TO DISMISS THE COMPLAINT

Defendant Clear Imaging, LLC, by it attorneys, Butzel Long, a professional

corporation, submit the following Brief in support of their Motion to Dismiss the

Complaint Pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) of the Federal Rules of

Civil Procedure.

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ...................................................iii
CONTROLLING AUTHORITY...............................................................v
INDEX OF AUTHORITY .....................................................................viii

I.  INTRODUCTION.....................................................................1

II. FACTUAL BACKGROUND ....................................................4

   A. Michigan's No-Fault Insurance Act.......................................4

   B. Allstate's Failed Efforts To Change the No-Fault Act's Unlimited
      Medical Benefits Paid to or on Behalf of Injured Parties. .....................7

   C. Plaintiff's Unsupported Allegations.......................................8

II. STANDARD OF REVIEW ......................................................10

III. ARGUMENT...........................................................................14

   A. The Court Should Abstain On the Basis of the *Burford* and/or
      *Colorado River* Abstention Doctrines.......................................14

      1. Abstention is Proper under the *Burford* Abstention Doctrine ......14

      2. Abstention is Proper Under the *Colorado River* doctrine.............17

   B. Reverse Preemption under the McCarran-Ferguson Act, 15 U.S.C. §
      1011 *et seq*, Precludes Allstate's RICO claims.........................19

      1. RICO Does Not Specifically Relate to the Business of Insurance. 21

      2. Michigan's Insurance Code was Enacted Specifically to Regulate
         the Business of Insurance................................................21

      3. Allstate's RICO Claims Will Invalidate, Impair and/or Supersede
         the Michigan's Insurance Code.........................................22

   C. Allstate's RICO Claims Should Be Dismissed (Counts I-XX) ...........22

      1. RICO Pleading Requirements..........................................22

         i. The 1962(c) Claims .................................................23

         ii. The § 1962(d) Claims.............................................23

D. Plaintiff's 1962(c) Claims Should Be Dismissed (Counts I, III, IV, XII, IX, XI, XIII, XV, XVII & XIX) ................................................................ 24

   1. The Complaint Fails to Plausibly Plead Any Enterprise .............. 24

   2. The Complaint Fails to Plausibly Plead that Defendants "Conducted the Affairs" of the Enterprise .................................. 27

   3. The Complaint's Allegations of Mail Fraud Fail to Meet the Requirements of Fed. R. Civ. P 9(b) ........................................... 33

   4. Having Failed to Properly Plead Mail Fraud, the Complaint Fails to Plead a Pattern of Racketeering Activity .................................. 39

   5. The Complaint Fails to Specifically Address the Continuity Requirements with respect to the Alleged RICO Pattern ........... 40

   6. The RICO Claim (or a portion of it) is Time Barred ................... 41

E. Allstate's Section 1962(d) Claims Fail Where it Has Not Pleaded Viable RICO claims (Counts II, IV, XI, XIII, X, XII, XIV, XVI, XVIII, & XX) ....................................................................................................... 42

F. Allstate's State law Claims Must Also be Dismissed ........................ 44

   1. Common Law Fraud & Conspiracy Claims (Counts XXI & XXII) ................................................................................................... 44

   2. Claim for Payment Under Mistake of Fact (Count XXIII) ........... 45

   3. Unjust Enrichment Claim (Count XXIV) .................................... 49

   4. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims .......................................................... 51

G. Allstate's Complaint for Declaratory Relief is Improper (Count XXV) ................................................................................................... 51

H. Collateral Estoppel Compels Dismissal or the Complaint of Portions Thereof ............................................................................................. 56

I. Allstate Has Voluntarily Waived Any Right to Contest the Propriety of Claims Previously Paid ..................................................................... 59

IV. CONCLUSION ........................................................................................ 60

## STATEMENT OF ISSUES PRESENTED

I.     Whether this Honorable Court should Abstain on the Basis of the *Burford* and *Colorado River* Abstention Doctrines or dismiss Plaintiff's RICO claims pursuant to the reverse preemption doctrine of the *McCarran-Ferguson Act*, 15 U.S.C. §§ 1101 *et seq*?

      Defendants Answer: **Yes**

II.     Whether this Honorable Court should dismiss Count XXV of Plaintiff's Complaint requesting a Declaratory Judgment under 28 U.S.C. § 2201 because the *Scottsdale* factors favor that the Court decline to exercise jurisdiction on State Farm's declaratory judgment claim?

      Defendants Answer: **Yes**

III.     Whether this Honorable Court should dismiss Plaintiff's Causes of Action, asserting Defendants' violations of 18 U.S.C. § 1962(c), for failure to state a claim upon which relief can be granted because: (a) the Complaint fails to plead an Enterprise; (b) the Complaint fails to plausibly plead that Defendants "conducted the affairs" of the alleged Enterprises; (c) the Complaint fails to plead a "pattern of racketeering activity"; (d) the Complaint fails to specifically address the "continuity" requirements with respect to the alleged RICO pattern; and (e) all claims for reimbursement submitted by Defendants before December 17, 2009 are barred by the RICO Statute's four-year statute of limitations?

      Defendants Answer: **Yes**

IV.     Whether this Honorable Court should dismiss Plaintiff's Causes of Action, asserting Defendants' violations of 18 U.S.C. § 1962(d), because the Complaint fails to plausibly plead that Defendants: (a) agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity or (b) that each Defendant further agreed that someone would commit at least two predicate acts to accomplish those goals? Alternatively, the 1962(d) claim fails because Plaintiff has failed to plausibly plead a violation of 1962(c)?

      Defendants Answer: **Yes**

V.   Whether this Honorable Court should dismiss Counts I-XXI and XXIV of Plaintiff's Complaint because Plaintiff has failed to meet the specificity pleading requirements of Fed. R. Civ. P. 9(b) with respect to the asserted RICO, Common Law Fraud and Unjust Enrichment claims?

   Defendants Answer: **Yes**

VI.   Whether this Honorable Court should dismiss Appropriate Portions of Count XXIV of Plaintiff's Complaint for Unjust Enrichment for failure to state a claim upon which relief can be granted because: (a) such claim is precluded by the existence of a written insurance agreement, (b) Plaintiff merely recites the elements of unjust enrichment in conclusory fashion, (c) Plaintiff's unjust enrichment claim is grounded in fraud and Plaintiff has failed to meet the pleading requirements of Fed. R. Civ. P. 9(b) with respect to the asserted Common Law Fraud and RICO claims, and (d) unjust enrichment's six-year statute of limitations bars Plaintiff's recovery on all payments before December 17, 2007?

   Defendants Answer: **Yes**

VII.   Whether this Honorable Court should dismiss Plaintiff's Complaint in its Entirety or Appropriate Portions Thereof on the Basis of Collateral Estoppel?

   Defendants Answer: **Yes**

VIII.   Whether this Honorable Court should decline to exercise supplemental jurisdiction over Plaintiff's State Law Common Law Fraud and Unjust Enrichment Claims where Plaintiff's federal claims are properly dismissed?

   Defendants Answer: **Yes**

IX.   Whether this Honorable Court should dismiss Plaintiff's Complaint because Plaintiff's excessively lengthy 230-page, 1,677 paragraph Complaint fails to meet the pleading requirements of Rule 8(a)(2) for "a short and plain statement of the claim showing that the pleader is entitled to relief"?

   Defendants Answer: **Yes**

## CONTROLLING AUTHORITY

I.    The decisions in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996); *Rouse v. Daimler Chrysler Corporation*, 300 F.3d 711 (6th Cir. 2002); *Gentry v. Wayne County*, 2010 U.S. Dist. LEXIS 123365 (E.D. Mich. 2010); the *McCarran-Ferguson Act*, 125 U.S.C. §§ 1101 *et. seq.*; *Riverview Health Institute v. Medical Mutual*, 601 F. 3d 505 (6th Cir. 2010); and *Genord v. Blue Cross & Blue Shield*, 440 F.3d 802 (6th Cir. Mich. 2006), dictate that the relief sought in the first issue presented in this Motion be granted.

II.    28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as well as the decisions in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Aetna Casualty and Sur. Co. v. Sunshine Corp.*, 74 F.3d 685 (6th Cir. 1996); and *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), dictate that the relief sought in the second issue presented in this Motion be granted.

III.    18 U.S.C. §1962(c), as well as the decisions in *Boyle v. U.S.*, 556 U.S. 938 (2009); *U.S. v. Turkette*, 452 U.S. 576 (1981); *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2000); *All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 Fed. Appx. 554 (6th Cir. 2006); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998); *Hall*

*Am. Ctr. Assocs. Ltd. Partnership v. Dick*, 726 F. Supp. 1083 (E.D. Mich 1989); *Reves v. Ernst & Young*, 507 U.S. 170 (1993); *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985); *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989); *Melton v Blankenship*, 2009 US App LEXIS 686 (6th Cir. 2009); *Begala v. PNC Bank, Ohio*, 214 F.3d 776 (6th Cir. 2000); and *Percival v. Girard*, 692 F. Supp. 2d 712 (E.D. Mich. 2010), dictate that the relief sought in the third issue presented in this Motion be granted.

IV.  18 U.S.C. §1962(d), and the decisions in *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998); and *Craighead v. E.F. Button & Co.,* 899 F.2d 485 (6th Cir. 1989), dictate that the relief sought in the fourth issue presented in this Motion be granted.

V.  Fed. R. Civ. P. 9(b), as well as the decisions in *Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008); *Boston v. Clark*, 2012 U.S. Dist. LEXIS 130496 (E.D. Mich. Sept. 13, 2012); *Paycom Billing Services, Inc. v. Payment Resources International,* 212 F. Supp. 2d 732 (W.D. Mich. 2002); and *McCormick v. Hanover Ins. Group, Inc.,* 2006 U.S. Dist. LEXIS 88847 (E.D. Mich. December 8, 2006), dictate that the relief sought in the fifth issue presented in this Motion be granted.

VI.  Fed. R. Civ. P. 9(b) and M.C.L §§ 600.5813 and 600.5827, as well as the

decisions in *Oak St. Funding, LLC v. Ingram*, 749 F. Supp. 2d 568 (E.D. Mich. 2010); and *Matthews v. Mortg. Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 69501 (E.D. Mich. Apr. 5, 2011), dictate that the relief sought in the sixth issue presented in this Motion be granted.

VII.   The United States Constitution, Art. IV, § 1 and 28 U.S.C. § 1738, as well as the decisions in *Allen v. McCurry*, 449 US. 90 (1980); *Migra v. Warren City School Dist.*, 465 U.S. 75 (1984); *Storey v. Meijer, Inc.*, 431 Mich. 368 (1988); and *Monat v. State Farm Ins. Co.*, 469 Mich. 679 (2004), dictate that the relief sought in the seventh issue presented in this Motion be granted.

VIII.   The decisions in *Carter v. Mich. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 134781 (E.D. Mich. 2013); *Sanders v. Mich. First Credit Union Tellers*, 2010 U.S. Dist. LEXIS 80908 (E.D. Mich. 2010); and *Grossman v. DTE Energy Co.*, 2010 U.S. Dist. LEXIS 133572 (E.D. Mich. 2010), dictate that the relief sought in the eighth issue presented in this Motion be granted.

IX.   Fed. R. Civ. P. 8(a)(2), as well as the decisions in *Toth v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 128296 (E.D. Mich. Aug. 20, 2013); *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985); and *US ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.* 637 F.3d 1047 (9th Cir. 2011), dictate that the relief sought in the ninth issue presented in this Motion be granted.

# INDEX OF AUTHORITY

## Cases

*Aetna Casualty and Sur. Co. v. Sunshine Corp.*,
    74 F.3d 685 (6th Cir. 1996) ................................................... 53

*Agency Holding Corp. v. Mally-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) .............................................................. 42

*All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*,
    162 Fed. Appx 554 (6th Cir. 2006) ....................................... 23

*Allen v. McCurry*,
    449 U.S. 90 (1980) ................................................................ 57

*Allstate Ins. Co. v. Mercer*,
    913 F.2d 273 (6th Cir. 1990) ................................................. 53

*American Home Assurance Co. v. Evans*,
    791 F.2d 61 (6th Cir. 1986) ................................................... 56

*AmSouth Bank v. Dale*,
    386 F.3d 763 (6th Cir. 2004) ................................................. 20

*Andersons, Inc. v. Consol, Inc.*,
    348 F.3d 496 (6th Cir. 2003) ................................................. 49

*Angott v. Chubb Group of Ins. Cos.*,
    270 Mich. App. 465 (2006) .................................................... 59

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................. 10, 11, 12, 39

*Beck v. Cantor Fitzgerald & Co.*,
    621 F. Supp. 1547 (N.D. Ill. 1985) ....................................... 23

*Begala v. PNC Bank, Ohio*,
    214 F.3d 776 (6th Cir. 2000) ................................................. 24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................. 10, 11, 12, 35, 39

*Boston v. Clark*,
    2012 U.S. Dist. LEXIS 130496 (E.D. Mich. Sept. 13, 2012) ............................ 50

*Broe Rehab. Svcs. V. Allstate Ins. Co.*,
    2008 Mich. App. LEXIS 820 (Mich. App. April 22, 2008) ............................. 39

*Brown v. Cassens Transp. Co.*,
   546 F.3d 347 (6th Cir. 2008) .................................................................. 23

*C & L Ward Bros. v. Outsource Solutions, Inc.,*
   2012 U.S. Dist. LEXIS 109068 (E.D. Mich. Aug. 3, 2012) .............................. 37

*Carter v. Mich. Dep't of Corr.*,
   2013 U.S. Dist. LEXIS 134781 (E.D. Mich. 2013) ........................................ 51

*Cedric Kushner Promotions, Ltd v. King,*
   533 U.S. 158 (2001) ............................................................................ 24

*Central Distributors of Beer, Inc.* v. *Conn,*
   5 F.3d 181 (6th Cir. 1993) .............................................................. 34, 37

*Craighead v. E.F. Button & Co.,*
   899 F.2d 485 (6th Cir. 1989) .................................................................. 24

*Dahlgren v First National Bank of Holdrege,*
   533 F.3d 681 (8th Cir. 2008) .................................................................. 28

*Durant v. Servicemaster Co.*,
   159 F. Supp. 2d 977 (E.D. Mich. 2001) ............................................... 23, 39

*Foster v. Argent Mortg. Co., L.L.S.,*
   2010 U.S. Dist. LEXIS 27926 (E.D. Mich. Jan. 25, 2010) .............................. 50

*Frank v. Dana Corp.,*
   547 F.3d 564 (6th Cir. 2008) .......................................................... 13, 35

*Genord v. Blue Cross & Blue Shield,*
   440 F.3d 802 (6th Cir. Mich. 2006) ................................................... 20, 21

*Gentry v. Wayne County,*
   2010 U.S. Dist. LEXIS 123365 (E.D. Mich. 2010) ........................................ 17

*Goren v. New Vision Int'l, Inc.,*
   156 F.3d 721 (7th Cir. 1998) ...................................................... 27, 28, 42

*Gotham Prints, Inc. v American Speedy Printing Ctrs., Inc.,*
   863 F. Supp. 447 (E.D. Mich. 1994) ......................................................... 36

*Grossman v. DTE Energy Co.,*
   2010 U.S. Dist. LEXIS 133572 (E.D. Mich. 2010) ........................................ 51

*Guaranty Nat'l Ins. Co. v. Cain,*
   1996 U.S. App. LEXIS 5495 (6th Cir. Feb. 8, 1996) ...................................... 53

*H. J. Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229 (1989) ............................................................................ 40

*Haisha v. Countrywide Bank, FSB*,
    2011 U.S. Dist. LEXIS 61443 (E.D. Mich. June 8, 2011) .................................. 13

*Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick*,
    726 F. Supp. 1083 (E.D. Mich. 1989) .................................................. 27

*Handeen v. Lemaire*,
    112 F.3d 1339 (8th Cir. 1997) ......................................................... 30

*Hanover Exch. v. Metro Equity Group LLC*,
    2009 U.S. Dist. LEXIS 59992 (E.D. Mich. July 14, 2009) .............................. 14

*Haroco v. American Nat'l Bank & Trust Co.*,
    747 F.2d 384 (7th Cir. 1984) .......................................................... 24

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...................................................... 15, 36

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) .......................................................... 13

*Hofmann v. Auto Club Ins. Ass'n*,
    211 Mich. App. 55 (1995) ............................................................. 38

*In re American Honda Motor Co. Dealerships Relations Litig.*,
    941 F. Supp. 528 (D. Md. 1996) ....................................................... 29

*Int'l Dairy Foods Ass'n v. Boggs*,
    2009 U.S. Dist. LEXIS 27074 (S.D. Ohio 2009) ......................................... 7

*Isaak v. Trumbull S&L Co.*,
    169 F.3d 390 (6th Cir. 1999) .......................................................... 42

*Jackson v Segwick Claims Mgt. Servs., Inc.*,
    699 F.3d 466 (6th Cir. 2012) .................................................. 13, 16, 34

*Jackson v. City of Columbus*,
    194 F.3d 737 (6th Cir. 1999) ........................................................... 8

*Lillard v. Shelby County Bd. of Educ.*,
    76 F.3d 716 (6th Cir. 1996) ...................................................... 11, 12

*Matthews v. Mortg. Elec. Registration Sys.*,
    2011 U.S. Dist. LEXIS 69501 (E.D. Mich. Apr. 5, 2011) ............................... 50

*McCormick v. Hanover Ins. Group, Inc.*,
    2006 U.S. Dist. LEXIS 88847 (E.D. Mich. December 8, 2006) ......................... 35

*McGee v. State Farm Mut. Auto. Ins. Co.*,
    2009 U.S. Dist. LEXIS 60229 (E.D.N.Y. July 10, 2009) ................................ 37

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ........................................................... 13

*Melton v Blankenship*,
2009 US App LEXIS 686 (6th Cir. 2009) .................................... 30

*Migra v. Warren City School Dist.*,
465 U.S. 75 (1984) ..................................................................... 58

*Miller v Allstate*,
275 Mich. App. 649 (2007) ......................................................... 38

*Monat v. State Farm Ins. Co.*,
469 Mich. 679 (2004) .................................................................. 58

*Montgomery Ward & Co v. Williams*,
330 Mich. 275 (1951) .................................................................. 45

*Moon v. Harrison Piping Supply*,
375 F. Supp. 2d 577 (E.D. Mich. 2005) ................................ 15, 16

*Moore v. First Security Cas. Co.*,
224 Mich. App. 370 (1997) ......................................................... 59

*Muci v State Farm Mutual Automobile Ins Co*,
478 Mich. 178 (2007) ......................................................... 5, 16, 21

*Oak St. Funding, LLC v. Ingram*,
749 F. Supp. 2d 568 (E.D. Mich. 2010) .................................... 49

*Paycom Billing Services, Inc. v. Payment Resources International*,
212 F. Supp. 2d 732 (W.D. Mich. 2002) .................................... 34

*Percival v. Girard*,
692 F. Supp. 2d 712 (E.D. Mich. 2010) ...................... 11, 12, 40, 41

*Preferred Medicine, Inc. v. Allstate Ins. Co.*,
2006 Mich. App. LEXIS 3567 (Mich. App. December 5, 2006) .............. 38

*Progressive Michigan Ins. Co. v. United Wisconsin Life Ins.Co*,
84 F. Supp. 2d 848 (2000) ......................................................... 45

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ..................................................................... 17

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ............................................................... 27, 28

*Reynolds v. Condon*,
908 F. Supp. 1494 (N.D. Iowa 1996) ......................................... 29

*Riverview Health Institute v. Medical Mutual,*
  601 F. 3d 505 (6th Cir. 2010) .................................................................... 21, 22

*Rohlman v Hawkeye-Security Insurance,*
  442 Mich. 520 (1993).......................................................................... 5, 16, 21

*Ross v. MERS/MERSCORP Holdings, Inc,*
  2013 U.S. Dist. LEXIS 61329 (E.D. Mich. Apr. 30, 2013)........................ 35, 42

*Rotella v. Wood,*
  528 U.S. 549 (2000)..................................................................................... 42

*Rouse v. DaimlerChrysler Corp.,*
  300 F.3d 711 (6th Cir. 2002) ....................................................................... 14

*Sanders v. Mich. First Credit Union Tellers,*
  2010 U.S. Dist. LEXIS 80908 (E.D. Mich. 2010)......................................... 51

*Schmidt v. Fleet Bank,*
  16 F.Supp.2d 340 (S.D.N.Y.1998).......................................................... 28, 29

*Schultz v. Tecumseh Products,*
  310 F.2d 426 (6th Cir. 1962) ....................................................................... 18

*Scottsdale Ins. Co. v. Flowers,*
  513 F.3d 546 (6th Cir. 2008) ....................................................................... 53

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479 (1985)......................................................................... 23, 26, 39

*Shavers v Kelley,*
  402 Mich. 554 (1978)..................................................................................... 5

*State Farm Mutual Automobile Insurance Company v. Pain & Injury*
  *Rehabilitation Clinic, et. al.,*
  2009 U.S. Dist. LEXIS 47962 (E.D. Mich. June 8, 2009) ............................ 38

*Storey v. Meijer, Inc.,*
  431 Mich. 368 (1988)................................................................................... 58

*Sundahl v. State Farm Mut. Auto. Ins. Co.,*
  2009 U.S. Dist. LEXIS 68093 (E.D.N.Y, Mar. 31, 2009)............................. 37

*Taylor Group v. ANR Storage Co.,*
  24 Fed. Appx. 319 (6th Cir. Mich. 2001) .................................................... 42

*Toth v. Wells Fargo Bank,*
  2013 U.S. Dist. LEXIS 128296 (E.D. Mich. Aug. 20, 2013)......................... 13

*United States Dep't of Treasury v. Fabe,*
   508 U.S. 491 (1993)...........................................................................21

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.,*
   525 F.3d 439 (6th Cir. 2008) ...........................................................36

*United States v. Diaz,*
   176 F.3d 52 (2d Cir. 1999)...............................................................28

*US ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) .........................................................13

*VanDenBroeck v. CommonPoint Mortg. Co.,*
   210 F.3d 696 (6th Cir. 2000) ...........................................................33

*Vickers Stock Research Corp. v. Quotron Sys.,*
   1997 U.S. Dist. LEXIS 10837 (S.D.N.Y. 1997).............................28

*Williams v. Pledged Prop. II, LLC,*
   508 Fed. Appx. 465 (6th Cir. Mich. 2012) .....................................49

*Wilson v Newman,*
   463 Mich. 435 (2000).......................................................................47

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995)..........................................................................53

*Yaldo v. Deutsche Bank Nat'l Trust Co.,*
   2010 U.S. Dist. LEXIS 125784 (E.D. Mich. Nov. 30, 2010)............35


**Statutes**
15 U.S.C. § 1011 ..............................................................................19
15 U.S.C. § 1012 ..............................................................................20
18 U.S.C. § 1962 ...........................................22, 23, 24, 40, 42, 43
18 U.S.C. § 1964 ..............................................................................22
28 U.S.C. § 1738 ..............................................................................57
28 U.S.C. § 2201 ..................................................................2, 51, 52
M.C.L. § 500.3101 .............................................................................4
M.C.L. § 500.3105 .............................................................................6
M.C.L. § 500.3107(1)(a) ....................................................................6
M.C.L. § 500.3116 .............................................................................7
M.C.L. § 500.3142(2).......................................................................59
M.C.L. § 500.3146 .............................................................................7
M.C.L. § 500.3148 ...........................................................................22
M.C.L. § 500.3157 .............................................................................6

M.C.L. § 500.4501 ............................................................................ 22
Michigan Insurance Code, 1956 Mich. Pub. Act 218 ............................ 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................ 4, 11, 59, 60
Fed. R. Civ. P. 57 ............................................................................... 52
Fed. R. Civ. P. 8(a)(2) ............................................................... 4, 13, 60
Fed. R. Civ. P. 9(b)........................................... 13, 34, 35, 36, 37, 45, 50, 60

**Other Authorities**

Gregory P. Joseph, CIVIL RICO: A DEFINITIVE GUIDE (3d ed. 2010)..................... 24
U.S. Const., Art. IV, § 1................................................................…......57

# **INTRODUCTION**

Defendant, Clear Imaging, LLC ("Clear Imaging"), challenges the validity of Allstate's claims, as they are woefully lacking in factual basis, despite the loquaciousness of the Complaint. Indeed, review of the daunting 230-page (w/o exhibits), 1,677 paragraph Complaint, reveals little more than innuendos, prolixity and almost entirely conclusory assertions. More importantly, however, is the patently improper motive underlying the Complaint. Setting aside the sheer volume of the Complaint, based on the overarching theme asserted—challenges to the reasonableness and medical necessity of personal injury protection ("PIP") benefits under Michigan's No-Fault Insurance scheme—it is clear that Allstate is using the federal judiciary to achieve results that have eluded it for years, namely significant revisions to Michigan's No-Fault Act. After numerous failed attempts to reform Michigan's No-Fault Act,[1] Allstate and many other insurers began a concerted campaign to minimize, if not eradicate, their responsibility for No-Fault benefits.[2] Allstate has further sought refuge from its statutory responsibility under

---

[1] *See e.g.,* **Exhibits 1 & 2**, 2011 House Bill 4936 and legislative analysis of the same (cap medical expenses at up to $1M); **Exhibit 3**, 2011 Senate Bill 294 (setting rates for services rendered to accident victims).
[2] State Farm and countless other insurers have been filing substantially similar lawsuits seeking a judicial decree as to the reasonableness of rates and the medical necessity of services. In many cases, the allegations are nearly identical, as are the tactics that have been employed by the insurers in state litigation pursuant to the No-Fault Act. For example, as to many of the same Defendants in this case, Allstate has engaged in improper discovery tactics, including discovery in state

1

the Act by refusing to pay for services rendered to its insured resulting in hundreds, if not thousands of provider lawsuits throughout the State. In the wake of countless provider suits, Allstate has instituted a campaign that calls for the filing of numerous federal actions,[3] similar to the one involved here, asserting violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), state common law fraud theories and most recently, declaratory actions.

In the instant case, Allstate's asserts 25 Counts against ***thirty one (31) Defendants*** alleging: ten counts each of Civil RICO and RICO conspiracy; one count for Declaratory Judgment under 28 U.S.C. § 2201, and one count each of common law fraud, civil conspiracy, payment by mistake of fact and unjust enrichment. For its claim of relief, Allstate seeks a return of all payments made to Defendants for claims based on treatment of Allstate's insureds (trebled as provided by statute where applicable); a declaration that Allstate need not pay ***any*** pending claims submitted by Defendants (including those that are currently the subject of provider lawsuits in State Courts); and, most startlingly, an injunction

---

provider suits that exceed the scope of proper discovery in those cases and impinge on discovery for the federal actions. Allstate's improprieties are further revealed in the frequent stays that it seeks in state court cases that rely on the instant case, but also similar suits brought by other insurers, including a pending case against many of these same Defendants by State Farm before Judge Murphy (E.D. Mich. Case. No. 2:14-cv-10266). *See* **Exhibit 4.**

[3]  In Michigan alone, Allstate has filed at least 6 Complaints since 2008 alleging, *inter alia*, RICO violations, the most recent having been filed on March 24, 2014 (E.D. Mich. Docket No. 2:14-cv-1120) and assigned to Judge Freidman. **Exhibit 5.**

against any future claims submitted by Defendants for items and services rendered to Allstate's insureds. While the Complaint is certainly verbose, its factual bases are both absent and conclusory.

Like others before it, and likely more to come, Allstate has chosen to not only challenge the routine professional medical judgment of providers under the No-Fault system, including the medical necessity of the services, but also the manner in which the *patients* obtained the services. Defendants submit that these claims are improperly pled, but more importantly, are improperly raised in this forum. The underlying claims—challenging the reasonableness of the services and the charges attendant to those services—are integral to Michigan's No-Fault statutory scheme, and are traditionally left to personal injury lawsuits and provider disputes brought in state courts. Indeed, Allstate fails to advise the Court that many of the claims at issue here have already been settled or litigated to full resolution in separate *State Court* proceedings, or are currently pending in Michigan State Courts.

As more fully discussed below, Defendants ask that the Court dismiss Allstate's Complaint for at least the following reasons:

1. Given that this case is a woefully disguised and unwarranted attack on the Michigan No-Fault insurance scheme, its resolution is best left to the State courts and this Court should abstain from hearing it;
2. Given the fact that the allegations are so vague, conclusory and utterly lack any factual bases as to Clear Imaging, as well as the other 30 Defendants, it fails to state any plausible claims upon which relief can be

granted;

3. The Declaratory relief requested is improper because it seeks a judicial decree on the fact-intensive issues of reasonableness and medical necessity under the No-Fault Act;

4. Because the RICO claims and various the state law claims sound in fraud, Allstate has not plead such claims with the requisite specificity as required by Fed. R. Civ. P 9(b); and

5. The remaining claims fall woefully short of the mark in several respects and similarly should be dismissed.

For the reasons more fully detailed below, Defendants request that the Court dismiss Allstate's Complaint pursuant to Fed. R. Civ. P. 8(a)(2), (9)(b) and 12(b)(6).

## I.  FACTUAL BACKGROUND

### A. Michigan's No-Fault Insurance Act

The central basis for Allstate's Complaint is the submission of purportedly fraudulent insurance claims by Defendant medical providers for reimbursement of services provided to Allstate's insured that were injured in automobile accidents pursuant to Michigan's No-Fault Insurance Act, M.C.L. § 500.3101 *et seq* (hereinafter the "Act").

> The Michigan No-Fault Insurance Act . . . was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could be most effectively achieved through a system of compulsory insurance whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state. Under this system,

4

victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort.

*Shavers v Kelley,* 402 Mich. 554, 578-579 (1978).[4]

Since *Shavers,* the Michigan Supreme Court has reiterated the comprehensive nature of the No-Fault statutory scheme. In *Muci v State Farm Mutual Automobile Ins Co,* 478 Mich. 178, 187-188 (2007), the Supreme Court stated the following:

> From our first handling of this statute in an advisory opinion issued in 1973, *Advisory Opinion re Constitutionality of 1972 Pa. 294,* 389 Mich 441, 208 NW2d 469 (1973), we have, **without exception, emphasized the act's comprehensive nature.** What is unmistakable about this first-party payment scheme is that it was designed to cover contingencies that could arise, including, as relevant here, the process for making a claim, the procedures for investigation by the insurer, **and the range of available enforcement tools.** All of which are found within the four corners of the act. (Footnote omitted; emphasis added).

In *Rohlman v Hawkeye-Security Insurance,* 442 Mich. 520, 525 (1993), the Michigan Supreme Court reiterated that since personal protection insurance benefits are mandated by the Act, the Act is the "rule book" for deciding issues involved in questions regarding awarding those benefits.

The Act requires every owner or registrant of a motor vehicle in Michigan to carry insurance. In turn, the Act requires an insurer to pay benefits under the law to or for the benefit of the insured individual. "An insurer is liable to pay benefits

---

[4] Emphasis supplied throughout, and footnotes and citations omitted throughout, unless otherwise noted.

5

for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." M.C.L. § 500.3105. No-Fault benefits are statutorily referred to as "*personal protection insurance benefits*" and are often referred to as "*PIP benefits;*" "*no-fault benefits;*" "*first party benefits;*" or "*economic loss benefits*." Under the Act, PIP benefits are usually paid by the victim's own insurance company and are always paid regardless of who was at fault for the accident.

No-fault PIP benefits payable under the Act include certain "allowable expenses," which is expressly defined as "***all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation***." M.C.L. § 500.3107(1)(a). The Act contains no further definition of the scope and extent of these allowable expenses. However, various court decisions have established that allowable expense benefits include a wide variety of products and services, including medical and hospital expenses; in-home nursing or attendant care; residential accommodations; room and board expenses; physical and vocational rehabilitation; special motor vehicle transportation; medical transportation mileage; guardianship expenses; etc.

Although the Act as a whole focuses on the insurer and the insured individual named in the policy, M.C.L. § 500.3157 also provides that:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily

6

injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered.

Insureds can assign their contractual right to No-Fault benefits to providers of medically necessary services who may then submit claims directly to an insurer on the insureds' behalf. The Act does not provide for the recovery of benefits paid to or for the benefit of the person named in the policy except in the limited circumstances set forth in M.C.L. § 500.3116. (*See also* M.C.L. § 500.3146).

### B. **Allstate's Failed Efforts To Change the No-Fault Act's Unlimited Medical Benefits Paid to or on Behalf of Injured Parties**

As noted above, Allstate and its fellow constituent insurers have made numerous attempts to change Michigan's No-Fault Insurance Act for their own financial benefit. One such example is an attempt to impose a cap on the State's currently unlimited medical benefits for those injured in a crash. *See e.g.*, **Exs. 1 & 2**. Other failed legislation sought to establish the rates that providers could charge for services rendered to victims of an automobile accident. *See e.g.*, **Ex. 3**. In 2011-12 alone, 38 Bills were introduced to modify the existing No-Fault scheme, only four of which unrelated to PIP benefits succeeded.[5]

---

[5]  *See* **Exhibit 6**, listing of 2011-12 No-Fault related legislation. The court can take judicial notice with respect to legislative history. *See e.g.*, *Int'l Dairy Foods Ass'n v. Boggs*, 2009 U.S. Dist. LEXIS 27074, at *50, n.17 (S.D. Ohio 2009) (*rev'd in part on other grounds*). This case, together with all other LEXIS cites and unpublished decisions cited herein, are attached as **Exhibit 10**.

7

The instant lawsuit is an attempt to achieve through litigation what Allstate has been unable to achieve through legislation. Allstate and its brethren have filed scores of RICO and other similar lawsuits around the Country as part of an observable effort to suppress the rights of insured and those treating them to receive reimbursement for services.[6] Allstate's voluminous pleading is a thinly veiled attempt to avoid its statutory obligation to pay for injuries sustained by its insureds in automobile accidents. Allstate's Complaint is predicated on argumentative, repetitive, inflammatory and irrelevant assertions concerning everything from allegedly improper self-referrals (Dkt. #1, ¶¶ 897-927), improper services that allegedly exceeded the Defendant practitioners scope of practice (*Id.* ¶¶ 502-509—use of heat/cold packs), excessive chiropractic services (*Id.* ¶¶ 525-532), "predetermined protocol" and/or a "similar course of treatment" (*Id.* ¶¶ 14, 19, 208, 416, 521, 616).

## C. Plaintiff's Unsupported Allegations

Allstate's Complaint conclusorily asserts that the **31 Defendants** "violated Michigan's No-Fault Act by submitting or causing to be submitted, or knowing that bills would be submitted to Allstate seeking reimbursement for services and treatment that were not reasonably necessary for the care, recovery, or

---

[6] A simple PACER search with Allstate as a plaintiff for RICO complaints (Case Code 470) is revealing in this regard, with the vast majority of claims having been filed in 2008-2013. The Court can take judicial notice of same. *See, e.g., Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

rehabilitation of the patients of the defendant medical providers, that was not lawfully rendered, and did not contain reasonable charges." (Dkt. #1, ¶ 184).

A central theme in Allstate's RICO claims is that services were performed pursuant to a fraudulent "predetermined protocol" whereby Defendants provided excessive and "often" unnecessary treatment to Allstate insured, including physical medicine and rehabilitation, chiropractic treatment, MRIs, electrodiagnostic testing, and injections. (*See e.g., Id.* ¶¶ 4, 14, 19, 208, 223, 253, 302, 416, 470-481). However, Allstate provides no factual basis whatsoever to support the allegations of such a "predetermined protocol." [7] Indeed, there is not an iota of factual support for the notion that there was any standard protocol whatsoever, let alone one that was fraudulent and predetermined. The Complaint further alleges that Defendants "relied on bogus diagnoses made by the healthcare professionals under their control to justify this treatment." (*Id.* ¶ 14). Notably, however, Allstate's 1,677 allegations rely largely on vagaries, supposition and hyperbole, couching the alleged services in such terms as "bogus," "insufficient," "incorrect," "unsubstantiated," "inadequate," insufficient," "unnecessary," "rarely necessary" and "unlawful." (*Id.* ¶¶ 13-15, 317, 911, 1196). Allstate further asserts that the charges for the Defendants' services were "unreasonable." (*See e.g., Id.* ¶¶ 1182, 1288-1289). Allstate's sweeping allegation that "the treatment rendered by the

---

[7] Allstate's alleged "predetermined protocol" allegation is not unique to this case or these Defendants. *See e.g.,* **Exhibits 4, 7 & 8**.

9

defendant medical providers was *rarely* necessary," "*frequently* violated established standards of care, reported false findings/results, treated excessively, and rendered treatment without adequate substantiation and justification," is exemplary of Allstate's far-reaching and unfounded Complaint. (*See e.g., Id.* ¶¶ 1288-1289). For example, despite select citations to medical journals pertaining to MRI, Allstate fails to provide any factual support for its conclusory assertion that the findings of the Defendant medical providers were "exaggerated," "reached in isolation from the (unidentified) patient's clinical picture," or "consistently . . . misrepresented findings." (*See e.g., Id.* ¶¶ 879, 890-91, 1196). Allstate repeatedly and without any factual support, attacks the professional judgment of the Defendant providers and the services rendered by the entity Defendants pursuant to that medical judgment. (*See e.g., Id.* ¶¶ 891-892, 1192-1197).[8]

Rhetoric and perjoratives aside, as discussed in detail below, Allstate fails to plausibly plead claims as required by *Twombly* and *Iqbal* because Allstate fails to present the necessarily factual support for it claims.

## II. STANDARD OF REVIEW

---

[8]  Allstate's Complaint also attacks the plaintiff's personal injury bar, yet Allstate has not sued any members of that bar for their alleged role in the purported fraudulent scheme. *See, e.g.,* Dkt. #1, ¶ 297 ("UHG/PHS and the attorneys worked in concert to demand payment from Allstate on the medical facility defendants' bills, which permitted the attorneys to use the extent and fact of treatment to inflate and bolster the claims submitted to Allstate when negotiating payment and during litigation of claims brought on behalf of the medical facility defendants and Allstate insureds").

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Percival v. Girard*, 692 F. Supp. 2d 712, 717 (E.D. Mich. 2010). In doing so, "the court must draw all reasonable inferences in favor of the" non-moving party. *Id.* Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions." *Percival*, 692 F. Supp. 2d at 717 (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). This Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. As this district has explained:

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Percival*, 692 F. Supp. 2d at 717 (quoting *Twombly*, *supra*). When applied to conspiratorial allegations, parallel conduct by defendants alone does not suggest a conspiratorial agreement.  While allegations of parallel conduct get the complaint

11

close to stating a claim, without "further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Percival*, 692 F. Supp. 2d at 718 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726. If a complaint fails these requirements, then a Motion to Dismiss should be granted, *before* the parties are allowed to proceed to discovery. *Twombly*, 550 U.S. at 559. Filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . Only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 1950. Thus, pleas for deficient complaints to go forward in an attempt to obtain discovery in order to make a plausible claim should be denied.

Additionally, where a complaint fails to comport with the mandate of Rule 8(a)(2) that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief" or are excessively lengthy and verbose, dismissal is

proper.  Fed. R. Civ. P. 8(a)(2).[9]

Claims alleging fraud have an even higher standard of review.  To meet the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008); *see also Haisha v. Countrywide Bank, FSB*, 2011 U.S. Dist. LEXIS 61443, at *7–8 (E.D. Mich. June 8, 2011) (granting Motion to Dismiss for failure to sufficiently plead). At a minimum, Plaintiff must allege the time, place, and contents of the misrepresentations upon which it relied. *Id. See also Jackson v Segwick Claims Mgt. Servs., Inc.*, 699 F.3d 466, 476 (6th Cir. 2012) (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012)); *Hanover Exch. v. Metro Equity Group LLC*, 2009 U.S. Dist. LEXIS 59992, at *17-19 (E.D. Mich.

---

[9]  There does not appear to be authority for the proposition that a pleading may be of unlimited length and opacity; indeed, case law in other jurisdictions suggests otherwise.  *McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir. 1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985)(upholding a Rule 8(a) dismissal of a complaint that "exceeded 70 pages in length [that was] confusing and conclusory"); *US ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) ("While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.'"); *see also Toth v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 128296, at *3-5 (E.D. Mich. Aug. 20, 2013), *adopted by*, 2013 U.S. Dist. LEXIS 127792 (E.D. Mich. Sept. 9, 2013).

July 14, 2009).

Because Allstate's Complaint fails to state a claim upon which relief could be granted for *any* of its claims, the Complaint should be dismissed.

## III.   ARGUMENT

## A. The Court Should Abstain On the Basis of the *Burford* and/or *Colorado River* Abstention Doctrines

### 1. Abstention is Proper under the *Burford* Abstention Doctrine

The Sixth Circuit has stated that abstention is appropriate under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) when "(1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 716 (6th Cir. 2002). Moreover, the goal of this abstention doctrine is to "avoid conflict with a state's administration of its own affairs." *Id.*

This is a textbook example of a case fit for *Burford* abstention. Michigan's No-Fault Act is a particularly unique state-law regime, which is unquestionably "of substantial public import." Additionally, the fact that the importance of these issues transcends the case at bar is demonstrated vividly by the myriad state-court cases

14

litigating these issues year after year. Because no-fault insurance is mandated by law in only a small minority of states, and because no other state has a scheme identical to Michigan's, it is appropriate to leave determination of issues under the Act to the Michigan courts. Intervention by the Federal courts risks the making of conflicting judgments and the thwarting of the state's attempt to manage "its own affairs."

In *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577 (E.D. Mich. 2005) (*rev'd in part on other grounds*), the court decided a similar abstention question with regard to workers' compensation benefits. Despite the plaintiff's arguments to the contrary, the court found that the case "bears upon Michigan's significant interest in safeguarding the policy balance that the legislature struck" and that "this federal forum would have minimal interest in determining plaintiff's entitlement to workers' compensation benefits." The court did not finally abstain, but only because the plaintiff's RICO claim was dismissed for other reasons, thus depriving the federal court of jurisdiction. If workers' compensation, which is present in every state even if with different details, is a sufficiently important state interest to warrant abstention, then Michigan's No-Fault Act must be an even clearer justification, standing as it does in stark contrast to most states' systems. This Court should follow the *Moon* court and opt out of endangering the legislature's

chosen policy balance.[10]

As noted above, the Michigan Supreme Court has repeatedly reiterated comprehensive nature of the no-fault statutory scheme, stating that it was "designed to cover contingencies that could arise, including . . . the process for making a claim, the procedures for investigation by the insurer, and the ***range of available enforcement*** tools.  All of which are found within the four corners of the [Act]." *Muci*, 478 Mich. at 187-88.  Indeed, the Michigan Supreme Court has touted the Act as the "'rule book' for deciding issues involved in questions regarding awarding [PIP] benefits." *Rohlman*, 442 Mich. at 525.  This Court should, like the *Moon* court, choose not to endanger the legislature's chosen policy balance.

This is a No-Fault case, irrespective of Allstate's attempt to pretend otherwise.  There is no pronounced federal interest here.  Allstate's many iterations of alleged fraud is a merely an attempt to turn its dispute of reasonableness and medical necessity under the Act into RICO claims simply to justify jurisdiction in this Court, forgetting that the Court is not required to exercise its jurisdiction under *Burford*.  This case goes beyond the mere "entangle[ment] in a skein of state law

---

[10]   The Sixth Circuit recently addressed *Burford* abstention in the context of a RICO action under the Michigan workers' compensation statute in *Jackson v. Segwick Claims Mgmt. Servs.*, 699 F.3d 466 (6th Cir. 2012).  The *Jackson* Court declined to abstain because, unlike *Moon's* implication of the workers' compensation statute, the *Jackson* complaint sought "only monetary damages relating to mail fraud, not additional worker's compensation." *Id.* at 480.

that must be untangled before the federal case can proceed," [11] significantly impacting the key standards under the Act. This case and the countless similar actions being filed throughout Michigan and across the Country by the insurance industry, is the industry's (including Allstate's) improper attempt to legislate through the judiciary by seeking to fix the rates for benefits under the Act. The Michigan Legislature has declined the insurance industry's attempt to cull back the Act. Firmly-rooted principles of "comity and federalism" strongly support the Court's invocation of its power to "abstain out of deference to the paramount interests of another sovereign," in this case the State of Michigan. The Act and its comprehensive "rule book" provide the proper avenue for resolving these issues in state court. This Court should ignore Allstate's transparent dissimulation, recognize the purely state-law basis for this entire action, and abstain.

## 2. Abstention is Proper Under the *Colorado River* doctrine

A Federal court "has the power to abstain from exercising its jurisdiction over a case in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." *Gentry v. Wayne County*, 2010 U.S. Dist. LEXIS 123365, at *5 (E.D. Mich. 2010) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)). This power should be utilized when two criteria are met: (1) the federal

---

[11] *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 724 (1996).

and state suits are parallel, and (2) "abstention will actually serve the end of efficient court administration." *Id.*

When it brought this federal case, Allstate was well aware that it was attempting to litigate the same issues it is actively litigating in numerous state courts simultaneously. At this moment, there are scores of state-court cases between Allstate and various medical service providers, including the instant entity Defendants. These cases generally involve Allstate's refusal to pay for PIP benefits, forcing the provider to bring suit against Allstate for reimbursement of such benefits provided to Allstate's insured under the Act.[12] It is a waste of this Court's resources to decide issues already being decided elsewhere.

This suit and the concurrent state suits are parallel proceedings. Taken as a whole, the state-court cases involve the same parties, and many others, and the same issues. Resolution of the state-court cases will resolve all or most of the issues before this Court, because the state-court cases will decide whether Defendants' charges are allowable under the Act. Notably, the issues in this case and the state-court cases are fundamentally the same. Despite Allstate's attempts to clothe its allegations in the language of federal law, this is a No-Fault Act case.

---

[12]   These state-court cases are too numerous to cite here, and new actions are filed on a daily basis. Defendants believe that identification of those cases that are impacted by this lawsuit is easily accomplished by Allstate and that it should be compelled to disclose this information, of which the Court may take judicial notice. *See e.g., Schultz v. Tecumseh Products*, 310 F.2d 426, 433 (6th Cir. 1962).

Allstate's claims asserting that Defendants' services and costs do not meet the requirements of medical necessity and reasonableness found in M.C.L. 500.3107(1)(a), are unaffected by the disguised references to RICO, fraud, unjust enrichment, etc. Regardless of the terminology used, Allstate and the Defendants are disputing the reasonableness and necessity of charges based on the Act and contracts made thereunder. This litigation is thus duplicative and falls squarely in the first prong of the *Colorado River* test.

The second prong of the *Colorado River* test is equally met. "Efficient court administration" would be promoted by abstention here, because, among other factors, (1) the state-court cases were filed first (and new ones continue to be filed); (2) the state-court cases are consequently further along in the litigation process; (3) Allstate's rights are adequately protected in state court; (4) abstention will help to avoid piecemeal litigation by avoiding duplication; (5) both federal and state courts have jurisdiction over Allstate's claims; and (6) most notably, the basis for this suit is state law. This last factor is by far the most compelling reason for abstention, since Allstate's attack of the Act is fundamentally a state concern. As such, Defendant invites the Court to abstain and allow the state courts to properly and efficiently resolve any disputes under Michigan's No-Fault statutory scheme.

**B. Reverse Preemption under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*, Precludes Allstate's RICO claims**

15 U.S.C. § 1011, *et seq.*, known as the *McCarran-Ferguson Act*, bars

Allstate's RICO claims. The *McCarran-Ferguson Act* dictates that insurance "shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). This provision, combined with 15 U.S.C. § 1012(b), which provides that "[n]o act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance" unless that act "specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Sixth Circuit has determined that the *McCarran-Ferguson Act* provides for "reverse preemption" in the insurance business and that "[a] general federal law that does not specifically related to the business of insurance, therefore, cannot be construed to 'invalidate, impair, or supersede" a state law enacted to regulate the insurance business." *Genord v. Blue Cross & Blue Shield*, 440 F.3d 802, 805 (6th Cir. Mich. 2006) (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 780-83 (6th Cir. 2004) and 15 U.S.C. § 1012(b)). This is precisely what Allstate's Complaint seeks to achieve—a judicial invalidation of the Michigan No-Fault Insurance Act and the PIP benefits provided thereunder.

The Court employs a three-prong test when determining whether reverse preemption is proper under *McCarran-Ferguson*:

> The threshold question is whether the federal statute at issue "specifically relates to the business of insurance." If it does, then the McCarran-Ferguson Act by its own terms does not allow for reverse preemption. . . If not, then there are two remaining questions that both must be answered in the affirmative in order to conclude that application of a federal law is reverse preempted by the existence of a

state law. One is whether the state statute at issue was "enacted . . . for the purpose of regulating the business of insurance." The other is whether the application of the federal statute would "invalidate, impair, or supersede" the state statute.

*Genord*, 440 F.3d at 805-806 (internal citations omitted). *See also Riverview Health Institute v. Medical Mutual,* 601 F. 3d 505, 514 (6th Cir. 2010).

### 1. RICO Does Not Specifically Relate to the Business of Insurance

Although RICO provides relief for 35 "predicate offenses" it does not specifically relate to the business of insurance. The Sixth Circuit has held that "RICO does not specifically relate to the business of insurance." *Genord*, 440 F.3d at 806. Therefore, the first question indicates that reverse preemption is applicable to Allstate's RICO claims.

### 2. Michigan's Insurance Code was Enacted Specifically to Regulate the Business of Insurance

The Michigan Insurance Code ("Code"), which includes the No-Fault Act is a comprehensive act, the purpose of which is "[a]n act to revise, consolidate, and classify the laws relating to the insurance and surety business." *Preamble,* Michigan Insurance Code, 1956 Mich. Pub. Act 218.

As an integral part of the Code, the Michigan Supreme Court has "without exception, emphasized the Act's comprehensive nature." *Muci*, 478 Mich. at 187; *Rohlman*, 442 Mich. at 525. In *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 503 (1993), the Supreme Court held that "[t]here can be no doubt that the

21

actual performance of an insurance contract falls within the 'business of insurance[.]'" Therefore, the second prong for reverse preemption has been met.

### 3. Allstate's RICO Claims Will Invalidate, Impair and/or Supersede the Michigan's Insurance Code

The Code expressly provides a process for resolution of provider claims and relief for the submission of false claims. *See* M.C.L. §§ 500.3142(2), 500.3148 and 500.4501 *et seq.* Michigan's Legislature specifically contemplated violations of the Code and expressly provided recourse for violations within the Code itself. Allowing Allstate's RICO claims to proceed would give it an avenue of recourse outside of that provided for in the Code. Additionally, RICO's treble damages provision would make it the preferred mechanism for potential plaintiffs to seek relief, leading to litigation of claims in federal courts for what are otherwise state court claims under the Code. Analysis of the third prong confirms that reverse preemption is proper in the instant case. *See Riverview Health*, 601 F. 3d at 518.

Accordingly, having met the requirements of the *McCarran-Ferguson Act,* Allstate's RICO claims are subject to reverse preemption and should be dismissed.

## C. Allstate's RICO Claims Should Be Dismissed (Counts I-XX)

### 1. RICO Pleading Requirements

In order to recover, a plaintiff must allege that defendant violated the substantive RICO statute, 18 U.S.C. § 1962, and that he was "injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964.

22

### i. The 1962(c) Claims

In order to state a viable claim under 18 U.S.C. § 1962(c), a plaintiff must establish: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008). Where a complaint "fail[s] to even address each of the prerequisite elements necessary to state a claim for civil RICO," such a claim is properly dismissed. *All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 Fed. Appx 554, 557 (6th Cir. 2006); *Durant v. Servicemaster Co.*, 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001) ("Because of the opprobrium that a RICO claim brings to a defendant . . . courts should eliminate frivolous RICO claims at the earliest stage of litigation."). "If plaintiff cannot plead a separate, lasting enterprise apart from each defendant alleged to be liable under Section 1962(c) and specify the predicate acts and conduct of that enterprise by each allegedly liable defendant with particularity, in separate counts, he has no business charging RICO violations." *Beck v. Cantor Fitzgerald & Co.*, 621 F. Supp. 1547, 1563 (N.D. Ill. 1985).

### ii. The § 1962(d) Claims

18 U.S.C. § 1962 (d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Such a "conspiracy claim is only as valid as the claim of underlying

23

violation of § 1962(a), (b), or (c) . . . ." Gregory P. Joseph, CIVIL RICO: A
DEFINITIVE GUIDE, 168 (3d ed. 2010). Thus, RICO *conspiracy* claims under section
(d), like the one alleged by Allstate cannot survive where the plaintiff has not
stated a cognizable, underlying RICO claim under sections (a)–(c) in the first
place. *Craighead v. E.F. Button & Co.,* 899 F.2d 485, 495 (6th Cir. 1989).

## D. Plaintiff's 1962(c) Claims Should Be Dismissed (Counts I, III, IV, XII, IX, XI, XIII, XV, XVII & XIX)

### 1. The Complaint Fails to Plausibly Plead Any Enterprise

The "person" who allegedly violates 1962(c) – *i.e.*, the defendant(s), must be
distinct from the "enterprise" whose affairs that person conducts.  Because only the
person – and not the enterprise – is liable under 1962(c), the person and the
enterprise must be separate entities. *Haroco v. American Nat'l Bank & Trust Co.,*
747 F.2d 384 (7th Cir. 1984), *aff'd by*, 473 U.S. 606 (1985). *See also Cedric
Kushner Promotions, Ltd v. King*, 533 U.S. 158 (2001). Moreover, "[a] corporation
cannot become an enterprise distinct from itself for RICO purposes."*Begala v.
PNC Bank, Ohio*, 214 F.3d 776, 781 (6th Cir. 2000).

Allstate names 10 different enterprises.  Each "Enterprise" is also a named
Defendant, as evidenced by the following table with citations to the Complaint:

| Alleged Enterprise | Named as Enterprise | Named as Defendant |
|---|---|---|
| Count I – UHG Enterprise | ¶ 1375 | ¶ 34 |
| Count III – Health Systems Enterprise | ¶ 1402 | ¶ 48 |
| Count V – UWC Enterprise | ¶ 1429 | ¶ 51 |

| Count VII - UWC – Detroit Enterprise | ¶ 1456 | ¶ 55 |
| Count IX - UWC – Flint Enterprise | ¶ 1483 | ¶ 58 |
| Count XI - UWC – Lansing Enterprise | ¶ 1510 | ¶ 62 |
| Count XIII – Clear Imaging Enterprise | ¶ 1537 | ¶ 66 |
| Count XV – Horizon Imaging Enterprise | ¶ 1564 | ¶ 69 |
| Count XVII – Associated Surgical Enterprise | ¶ 1590 | ¶ 72 |
| Count XIX – American Surgical Enterprise | ¶ 1617 | ¶ 77 |

In other words, Plaintiff has simply named the various corporate Defendants as both culpable "persons" under RICO and separately as "enterprises." In an effort to avoid the requirement that the enterprise and the RICO defendant be distinct, Allstate resorts to a patently obvious shell-game. As an example, in Counts I and II, Allstate identifies an alleged "UGH Enterprise." (Dkt. #1, ¶¶ 1375, 1383). Allstate then omits UHG as a Defendant in Counts I & II. But UHG is named as a Defendant in the remaining RICO counts with respect to the other 9 enterprises. (*Id.* ¶¶ 1391, 1410, 1418, 1437, 1445, 1464, 1472, 1491, 1499, 1518, 1526, 1545, 1553, 1572, 1580, 1598, 1606 & 1625). Allstate offers no factual support for distinguishing between UHG's role in the 9 other alleged Enterprises from a role in the UHG Enterprise – indeed, it is patently obvious that the only reason Allstate omits UHG as a defendant in Counts I & II is a ham-handed attempt to avoid running afoul of the distinctiveness requirement.

Allstate's artifice is all the more obvious from the fact it offers 10 different enterprises without distinguishing between them in any substantive manner. Rather, the various RICO Counts contain conclusory "canned" statements as to

25

each enterprise.  For example, with respect to the UHG enterprise, Allstate asserts:

> In connection with each of the claims identified in the within Complaint…[the] ("Count I defendants") intentionally caused to be prepared and mailed false medical documentation by UHG, or knew that such false medical documentation would be mailed in the ordinary course of UHG's business, or should have reasonably foreseen that the mailing of such false medical documentation by UHG would occur, in furtherance of the Count I defendants' scheme to defraud. [*Id.* ¶ 1364].

> The Count I defendants employed, knew, or should have foreseen that two or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 22. [*Id.* ¶ 1365].

Allstate makes ***precisely the same allegations*** with respect to each of the other Enterprises; in each case, the only variation is between the named defendants in that Count, otherwise Allstate's language is identical in conclusorily alleging that the defendants intentionally mailed false documentation and citing to Exhibit 22 of the Complaint:

| | |
|---|---|
| Count III – Health Systems Enterprise | ¶¶ 1391, 1392 |
| Count V – UWC Enterprise | ¶¶ 1418, 1419 |
| Count VII - UWC – Detroit Enterprise | ¶¶ 1445, 1456 |
| Count VII - UWC – Flint Enterprise | ¶¶ 1472, 1473 |
| Count XI - UWC – Lansing Enterprise | ¶¶ 1499, 1500 |
| Count XIII – Clear Imaging Enterprise | ¶¶ 1526, 1527 |
| Count XV – Horizon Imaging Enterprise | ¶¶ 1553, 1554 |
| Count XVII – Associated Surgical Enterprise | ¶¶ 1580, 1581 |
| Count XIX – American Surgical Enterprise | ¶¶ 1606, 1607 |

As stated above, Allstate must plausibly plead the "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima,* 473 U.S. at

496.    Allstate makes absolutely no attempt to demonstrate, for example, how the particular defendants named conducted the "UHG Enterprise" through which "pattern" of racketeering activity *as distinguished* from how the particular defendants named conducted the "Clear Imaging Enterprise" through which "pattern" of racketeering activity.  No plausible enterprise has thus been plead.

### 2.  The Complaint Fails to Plausibly Plead that Defendants "Conducted the Affairs" of the Enterprise

Allstate's Complaint must contain factual allegations that would lead to the conclusion that *each defendant* was actually involved in directing the affairs of the *enterprise*; otherwise dismissal is proper.  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). "Each defendant is entitled to individual consideration and to know what enterprise it is that they are alleged to have illegally conducted through a pattern of racketeering activity." *Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,* 726 F. Supp. 1083, 1089 (E.D. Mich. 1989). "If the plaintiffs intend to allege separate RICO claims as to . . . [multiple defendants], they should allege separate RICO counts in which they provide factual support for *each* RICO element as to *each* RICO defendant." *Id.* at 1091 (emphasis in original).

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court affirmed that the phrase "conduct or participate…in the conduct" means that the defendant must be involved in the operation or management of the enterprise. *Id.* at

179. Thus the defendant must have some part in directing the enterprise's affairs. *Id.* Persuasive power does not constitute "operation or management" within *Reves*. *See e.g., Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 347 (S.D.N.Y.1998); *Vickers Stock Research Corp. v. Quotron Sys.*, 1997 U.S. Dist. LEXIS 10837, at *9-10 (S.D.N.Y. 1997), *aff'd.*, 1998 U.S. App. LEXIS 22046 (2d Cir. Aug. 24, 1998). Liability depends on a showing that the "defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs". *Cedric Kushner*, 533 US at 163 (quoting *Reves*, 507 US at 185) (emphasis in original).

Simply taking directions and performing tasks that are necessary or helpful to the enterprise – without more, is insufficient under 1962(c). *United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999). Similarly, "performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren*, 156 F.3d at 727-28. In *Dahlgren v First National Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008), the court found that

> A bank's financial assistance and professional services may assist a customer engaging in racketeering activities, but that alone does not satisfy the stringent "operation and management" test of *Reves. See Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346-48 (S.D.N.Y.1998), and cases cited. In *Schmidt,* allegations that the bank approved overdrafts on 500 occasions, misrepresented the status of accounts to investors, and helped its customer conceal his fraudulent scheme were held to be insufficient to satisfy this test....

28

> With one possible exception, all of the Bank's actions that plaintiffs
> cite as evidence of the Bank's control of DCC fall into the category of
> a creditor conducting its own affairs. The Bank allowed the
> commingling of Damrow entity funds, honored substantial overdrafts
> (in effect, informally increasing the borrower's line of credit, for a
> one-time fee), allowed DFF notes to the Bank to remain past due
> (again, thereby increasing DCC's line of credit), honored DCC n.s.f.
> checks to investors, recommended its customer DCC to other Bank
> customers, encouraged its correspondent regional bank to participate
> in the lines of credit, told Damrow he must increase equity investment
> and eliminate intra-enterprise liabilities on DCC's financial statement
> to get a loan approved, transferred funds between Damrow entity
> accounts pursuant to loan agreement cross-guarantees without
> Damrow's permission, and required Damrow to sign a new deed of
> trust on the feedlot. As the court held in *Schmidt,* simply because a
> bank *allows* a heavily indebted customer to take actions such as
> overdrafts and late note payments that the bank might prevent by
> exercising its formidable rights as creditor is not evidence that the
> bank controlled the customer's operations and management. 16
> F.Supp.2d at 346-48. "Bankers do not become racketeers by acting
> like bankers." *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank,*
> 934 F.2d 976, 981 (8th Cir.1991).

*Id.* at 690. *See also In re American Honda Motor Co. Dealerships Relations Litig.,*
941 F. Supp. 528, 560 (D. Md. 1996) ("Th[e] cases reveal an underlying distinction between acting in an advisory professional capacity (even if in a knowingly fraudulent way) and acting as a direct participant in [an enterprise's] affairs.).

The court's decision in *Reynolds v. Condon*, 908 F. Supp. 1494 (N.D. Iowa 1996) is also instructive:

> As to defendant Orzechowski, the court does not believe that the mere
> fact that she was a partner in the Law Firm necessarily means that she

29

"conducted" the enterprise for the purposes of a RICO claim. In other words, her status as a partner does not mean that she "conduct[ed] the affairs of [the Law Firm] by ... acting in a *managerial* capacity, *through racketeering activity.*"

*Id.* at 1511-12. *See also Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) ("an attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." citing cases from the Second, Third, Sixth, Eighth and Ninth Circuits). *See also Melton v Blankenship*, 2009 US App LEXIS 686, at *7-9 (6th Cir. 2009) (citing *Handeen* with approval).

Moreover, "RICO is not a surrogate for professional malpractice actions." *Handeen*, 112 F.3d at 1348. Yet, this is precisely what Allstate is seeking to do, challenge the professional judgment of the medical providers to Allstate's insured (and others) pursuant to a policy of No-Fault insurance.

The Complaint fails to plausibly allege that the Defendants conducted the affairs of the alleged Enterprises. As to each of the ten alleged Enterprises, the Complaint alleges that each such Enterprise was comprised of all or a vast majority of the *Defendants*. As such, Allstate is required to allege (with factual support) how each Defendant participated in the operation and management of each Enterprise. Allstate utterly fails to do so, instead asserting (without sufficient factual bases) nothing more than the provision of run-of-the-mill professional services by the entity and individual Defendants alike and individuals acting in an advisory capacity to these entities. This is insufficient to meet the necessary

30

element that *each* Defendant conducted the affairs of *each* alleged Enterprise.

With respect to Defendant Clear Imaging, Allstate does not allege that Clear conducted the affairs of any of the other 9 Enterprises for which it was allegedly associated. Indeed, the crux of Allstate's Complaint pertains to relationships between Clear Imaging and the many purported Enterprises as a provider of medical services, and not as a party that had any role in the conduct of the various enterprises affairs. Indeed, in only perfunctory fashion, Allstate merely asserts that:

- Clear Imaging "is part of the UHG/PHS conglomerate and is a frequent beneficiary of referrals from UHG and the other defendant medical providers." (Dkt. #1, ¶ 67).

- Several Allstate insureds at issue in this Complaint treated at Clear Imaging, including those insureds identified in Exhibit 7 annexed hereto. (*Id.* ¶ 68).

- Clear Imaging billed Allstate directly for the services it rendered to Allstate insureds. (*See e.g., Id.* at ¶¶ 896, 943, 957, 982, 1006).

- "Patient of the UHG/PHS conglomerate were *referred* to . . . Clear Imaging without the choice of imaging center " through the use of a "UHG referral form" directing patients to "either 'Clear' or 'Horizon' or "[a] third option merely stat[ing] 'Other.'" (*Id.* ¶¶ 899-902).

- For each alleged Enterprise, Allstate merely asserts that "defendants participated in the conduct of this enterprise through a pattern of racketeering activities." (*Id.* ¶¶ 1376, 1403, 1430, 1457).

Setting aside the vast array of conclusory allegations that is the Complaint, the allegations do little more than allege the existence of various and, in many instances, related corporate entities that were under common ownership,

31

incorporated by, managed by or otherwise employed in some fashion the individual Defendants.   Indeed, Allstate recognizes the relationship of the Defendants as merely related entities, as opposed to a RICO "Enterprise" in its description of a "UHG/PHS Conglomerate" and a "UHG/PHS Network." (*See e.g., Id.* ¶¶ 185-209; *see also* ¶¶10-11, 236).

The entirety of Allstate's allegations relate to the relationship by and between certain Defendants. They do not, however, relate to any of the Defendants' conducting the affairs of any alleged Enterprise.  Indeed, each alleged Enterprise is a conclusory allegation that each Defendant entity *is the Enterprise,* whose named owners and employees (Defendants) and related entities conducted *their own affairs*.

Perhaps the most glaring flaw concerns the bare corporate existence of the Defendants. Despite the fact that Allstate alleges that the alleged fraudulent scheme began in 2007, UHG, Associated Surgical Center, American Surgical Centers I and II, WCIS Media, and UHG Management, were the *only* corporate Defendants in existence at that time. (*Id.* ¶¶ 23, 34, 72, 77).  Clear Imaging and 8 other Defendant entities such as Horizon Imaging, PHS, Health Systems, Inc., UWC, UWC-Detroit, UWC-Flint, UWC-Lansing, and Greater Michigan

Professional Services, LLC, were not even formed until years later.[13] (*Id.* ¶¶ 38, 48, 55, 58, 62, 66, 69, 93, 95). Thus, Allstate's conclusory allegation that all of the Defendants were members of the ten (10) "Enterprises" where they were not even in existence is utterly implausible and raises considerations of Rule 11 sanctions.

### 3. The Complaint's Allegations of Mail Fraud Fail to Meet the Requirements of Fed. R. Civ. P 9(b)

"A RICO Complaint must allege facts which would, if proved, constitute acts indictable under the listed [predicate acts of racketeering activity] statutes. In a sense, RICO is derivative." *DeLorean v. Cork Gully*, 118 B.R. 932, 940 (E.D. Mich. 1990). The only RICO predicate act alleged to have been committed by Defendants is mail fraud (18 U.S.C. § 1341) (Dkt. #1, ¶¶ 1327-1356).

Mail fraud is proven by showing "[1] a scheme or artifice to defraud combined with [2] either a mailing or an electronic communication [3] for the purpose of executing the scheme." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 701 (6th Cir. 2000), *abrogated on other grounds by, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

An actionable scheme or artifice to defraud is defined as "intentional fraud, consisting in deception intentionally practiced to induce another to part with

---

[13] Although Universal Health Group was formed in 2007, all of the listed assumed names for this entity such as Saginaw Spine and Pain, Michigan Spine and Rehab, Associated Medical, Inc., Associated Chiropractic & Medical Center, and Rehab, Inc, were not formed until 2010-2012. *See* **Exhibit 9.**

property or to surrender some legal right, and which accomplishes the designed end." *Id.*; *see also Hall*, 726 F. Supp. at 1093.

Allstate is required to allege facts that establish (or that at least give rise to the reasonable inference) that Defendants entered into an agreement to conduct a scheme with the specific intent to defraud Allstate using the U.S. Mail to deliver false or misleading materials. *Central Distributors of Beer, Inc.* v. *Conn*, 5 F.3d 181, 184 (6th Cir. 1993).

As noted above, because Allstate's RICO claims allege mail fraud as an element, Plaintiffs must also satisfy the heightened particularity requirements of Rule 9(b) with respect to the elements of fraud. *Paycom Billing Services, Inc. v. Payment Resources International,* 212 F. Supp. 2d 732, 736 (W.D. Mich. 2002). Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Jackson*, 699 F.3d at 476 (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting Fed. R. Civ. P. 9(b)). This includes alleging, at a minimum, the "time, place, and content" of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and "the injury resulting from the fraud." *Id.* (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)); *see also McCormick v. Hanover Ins. Group, Inc.,* 2006 U.S. Dist. LEXIS 88847, at *11 (E.D. Mich.

December 8, 2006) (dismissing RICO claims because the plaintiff failed "to allege a pattern of racketeering activity, an enterprise, or fraud with sufficient particularity [pursuant to Fed. R. Civ. P. 9(b)]")(Roberts, J.).

To meet the particularity requirements of Rule 9(b), Allstate must, at a minimum, "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008). A plaintiff must also provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Yaldo v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 125784, at *10 (E.D. Mich. Nov. 30, 2010) (dismissing fraud claim where conclusory allegations merely restated the elements of fraudulent misrepresentation); *Ross v. MERS/MERSCORP Holdings, Inc*, 2013 U.S. Dist. LEXIS 61329, at *10-11 (E.D. Mich. Apr. 30, 2013) (dismissing Plaintiff's Complaint for failure to state with specificity any mail fraud claims).

The heightened pleading requirement of Rule 9(b) serves multiple purposes, including: protecting defendants from "abusive litigation" and "fishing expeditions," protecting businesses and individuals from reputational harm, and putting defendants on notice of the specific charged conduct so they can prepare responsive pleadings. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d

35

439, 445 (6th Cir. 2008). Rule 9(b) is also designed to "eliminate fraud actions in which all facts are learned after discovery." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

In addition to its impermissible length and prolixity and lack of "short and plain statements" in violation of Rule 8(a)(2),[14] Allstate's Complaint utterly fails to meet the pleading requirements of 9(b) with respect to its mail fraud claim. Though it relies on Exhibits to the Complaint, Allstate has failed to specify which statements within them are false or misleading and how they relate to Defendants, in any way. Instead, the exhibits only generically identify categories such as the initials of the patient, dates of service, CPT Code and descriptions and amounts billed (*see e.g.,* Dkt. #'s 1-2 to 1-11, 1-18, 1-22 and 1-23).[15] Indeed, even in its Exhibit 22 (Dkt #1-23), which purports to identify the specific documents that were mailed to Allstate, there is no indicia as to what was false or fraudulent. Allstate has not alleged "facts to show *which* of the Defendants caused *what* statements to be mailed, together with *when* and *how* each mailing furthered the scheme." *Gotham Prints, Inc. v American Speedy Printing Ctrs., Inc.,* 863 F. Supp. 447, 458 (E.D. Mich. 1994).

---

[14] *See* FN 9, *supra.* As the *Cafasso* Court duly opined, "district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations." *Cafasso,* 637 F.3d at 1059.
[15] Notably, Allstate only identifies amounts purportedly *billed* by Clear Imaging, and not the amounts actually *paid.*

Merely proclaiming the statements or mailings are "false" or "fraudulent," as Allstate does here, is insufficient as a matter of law. Allstate's blanket assertions of fraud and allegedly unlawful relationships to support its RICO claims fail to meet the Rule 9(b) standard and should be dismissed. *C & L Ward Bros. v. Outsource Solutions, Inc.,* 2012 U.S. Dist. LEXIS 109068, *14-16 (E.D. Mich. Aug. 3, 2012).

Not only are Allstate's allegations unacceptable as true, "there is no specificity in any of Plaintiffs' conclusory allegations" or exhibit summaries as to how the claims submitted to Plaintiff concealed any ***material facts*** concerning the treatments, rendering any portion of those claims false or misleading. *See Allstate Ins. Co.* v. *Advanced Health Prof Is, P.C.,* 256 F.R.D. 49, 62 (D. Conn. 2008). *See also McGee v. State Farm Mut. Auto. Ins. Co.,* 2009 U.S. Dist. LEXIS 60229, at *17-18 (E.D.N.Y. July 10, 2009) ("In short, McGee's complaint contains only conclusory allegations of fraud, which are insufficient to survive a motion to dismiss RICO claims, especially given the inevitable stigmatizing effect a RICO claim can have on a defendant."); *accord Sundahl* v. *State Farm Mut. Auto. Ins. Co.,* 2009 U.S. Dist. LEXIS 68093, at *10-11 (E.D.N.Y, Mar. 31, 2009) (dismissing similar RICO complaint against State Farm because it "d[id] not explain the facts of the fraud and contain[ed] largely conclusory allegations of fraud.").

Moreover, despite Allstate's conclusory allegations that the Defendants' services were unlawfully provided (i.e., through the uses of a referral source or even runners), Allstate fails to provide any factual basis that such conduct was material to its statutory liability to pay PIP benefits. More importantly, Allstate cannot avoid its statutory obligation to pay for medically necessary PIP benefits by alleging improper conduct (*eg..,* its claim that the services exceeded the providers scope of practice).   The requirement under the Act that treatment be "lawfully rendered" applies only to the treatment itself and the ability of the person or entity providing such treatment be properly qualified (i.e., licensed) to render the treatment. *See e.g., Miller v Allstate*, 275 Mich. App. 649, 655-658 (2007), *aff'd*, 481 Mich. 601 (2008); *Hofmann v. Auto Club Ins. Ass'n*, 211 Mich. App. 55, 64 (1995). *See also State Farm Mutual Automobile Insurance Company v. Pain & Injury Rehabilitation Clinic, et. al.*, 2009 U.S. Dist. LEXIS 47962, at \*12 (E.D. Mich. June 8, 2009) ("violation of [Michigan licensure] rule is at most a technical violation which has no bearing on whether the services at issue in this case were lawfully rendered.").

In *Preferred Medicine, Inc. v. Allstate Ins. Co.,* 2006 Mich. App. LEXIS 3567 (Mich. App. December 5, 2006), the Court extended *Miller* "to other corporate improprieties, ***including self-referrals and unlicensed shareholders*** . . . which pertain to the formation or operation of the corporate employer and which

38

are likewise irrelevant to treatment, so long as 'licensed employees are caring for and providing serves and treatment to patients.'" *Id.* at *14-15. In subsequent litigation, Allstate has conceded as much, therefore raising it in the instant case is not merely conclusory but wholly misleading. *See Broe Rehab. Svcs. V. Allstate Ins. Co.,* 2008 Mich. App. LEXIS 820, at *8 (Mich. App. April 22, 2008)("Allstate essentially conceded [that the lawfulness of an entity's corporate structure was irrelevant to the lawfulness of the treatment rendered, i.e., if a licensed practitioner rendered the treatment, then the services were lawfully rendered]").

Accordingly, the Complaint and exhibit summaries do not contain sufficient allegations of fact, as a matter of law, to state a "plausible," cognizable fraud-based claim, and should be dismissed. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 667-78. Indeed, Allstate's failure to allege facts, as opposed to unsupported conclusions, is not surprising because no such facts exist. As this district has previously instructed, "courts should eliminate frivolous RICO claims at the earliest stage of litigation." *Durant v. Servicemaster Co.,* 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001).

## 4. Having Failed to Properly Plead Mail Fraud, the Complaint Fails to Plead a Pattern of Racketeering Activity

"[R]acketeering activity consists of no more and no less than the commission of a predicate act." *Sedima*, 473 U.S. 495. As detailed above, the only

racketeering activity alleged to have been committed by Defendants is the predicate act of mail fraud. Having failed to plead mail fraud with the requisite specificity, Allstate has thus failed to plead a pattern of racketeering activity as required by the RICO statute.

### 5. The Complaint Fails to Specifically Address the Continuity Requirements with respect to the Alleged RICO Pattern

A pattern of racketeering requires allegations of predicate acts that amount to or constitute a threat of *"continuing* racketeering activity." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The Supreme Court has described continuity as either "closed-ended," referring to a closed period of repeated conduct extending over a substantial period of time, or "open-ended," referring to past conduct "which by its nature projects into the future with a threat of repetition." *Id.* at 241-42. Moreover, this Court has held that **"A 'single, fraudulent scheme' to accomplish a single objective does not 'possess the requisite RICO continuity.'"** *Percival v. Girard*, 692 F. Supp. 2d 712, 722 (E.D. Mich. 2010).

Plaintiff has failed to plead or allege a pattern, including continuity. Allstate merely alleges that:

> By mailing, or agreeing that the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count I defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c). [Dkt. #1, ¶¶ 1373-1376].[16]

---

[16]  The same conclusory allegation is made in each of the RICO Claims.

Allstate's general allegations that the fraudulent bills and corresponding mailings described in the attached Exhibits to its Complaint comprise the pattern of racketeering activity identified through the date of the Complaint (*Id.* ¶ 283) also fail to satisfy Plaintiff's burden to plead a pattern of racketeering activity, including continuity. At most, the entire Complaint, taken as true and viewed in the light most favorable to Allstate, describes a single, allegedly fraudulent scheme to accomplish a single objective. Just as in *Percival*, this claim should be dismissed. Indeed, the fact that the majority of the corporate Defendants did not even exist until years after the start of the alleged scheme gut Allstate's allegations regarding any fraudulent scheme (whether it be a single scheme or pattern of racketeering activity). At a minimum, Allstate's deficiencies with respect to dates of the purported mail fraud preclude an assessment of continuity.

### 6. The RICO Claim (or a portion of it) is Time Barred

Allstate alleges that "since 2007, the medical facility defendants (by and through the facilitation and support of each defendant named herein) have billed Allstate in excess of $11,929,988 and Allstate has paid them in excess of $3,697,049." (Dkt. #1, ¶ 432). To the extent that Allstate seeks to recovery payments made prior to December 16, 2009 (4 years before the Complaint was filed), they are barred by the four- year statute of limitations period for civil RICO

claims.  *See Agency Holding Corp. v. Mally-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 555-57 (2000).  *See also Isaak v. Trumbull S&L Co.*, 169 F.3d 390, 399 (6th Cir. 1999)("the running of the statute of limitations begins when . . . the plaintiff has been presented with evidence suggesting the possibility of fraud . . . not full exposition of the scam itself"); *Ross v. MERS/MERSCORP Holdings, Inc*, 2013 U.S. Dist. LEXIS 61329, at *10 (E.D. Mich. Apr. 30, 2013) ("Even though Plaintiff did not investigate what was in his credit records until 2012, Plaintiff's credit reports were available at his request well before 2012. Plaintiff's claims under RICO are barred by the four-year limitation period."); *Taylor Group v. ANR Storage Co.*, 24 Fed. Appx. 319, 325 (6th Cir. Mich. 2001) (holding that plaintiffs' RICO claim was time-barred because "plaintiffs, through the exercise of reasonable diligence, should have discovered that they had a cause of action against defendant.").

To the extent Allstate seeks to recover payment made more than four years before the filing of this Complaint, they are time-barred by the RICO statute of limitations.

### E. Allstate's Section 1962(d) Claims Fail Where it Has Not Pleaded Viable RICO claims (Counts II, IV, XI, XIII, X, XII, XIV, XVI, XVIII, & XX)

To plead a viable § 1962(d) claim, a plaintiff must allege that a defendant "agreed to the objective of a violation of RICO." *Goren*, 156 F.3d at 732.  More

42

specifically:

> From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ...: an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential. Thus, in order to state a viable claim under § 1962(d), [Plaintiff] must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals.

*Id.*

The entirety of Allstate's allegations with respect to its 1962(d) claims are as follows:[17]

- Defendants each agreed to further, facilitate, support, and/or operate the [ ] enterprise. (*See e.g.,* Dkt. #1, ¶ 1384).
- Defendants conspired to violate 18 U.S.C. § 1962(c). (*Id.* ¶ 1385).
- The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of [Defendant/Enterprise] even though Defendant/Enterprise was not eligible to collect No-Fault payments by virtue of its unlawful conduct. (*Id.* ¶ 1386).
- Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including soliciting patients,

---

[17] The same allegations are asserted in each of the RICO Conspiracy claims.

43

rendering unnecessary treatment to patients, and the creation and submission to Allstate of insurance claim and legal documents containing material misrepresentations and/or material omissions. (*Id.* ¶ 1387).

- Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Defendants' unlawful conduct described herein. (*Id.* ¶ 1388).

Yet again, these allegations are entirely conclusory and without factual support. The Complaint contains absolutely no factual support that each and every Defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity. Nor does the Complaint allege—much less provide factual support for an allegation—that each Defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. Indeed, based on Allstate's allegations that the alleged fraudulent scheme began in 2007, at a time when the majority of the corporate Defendants had not even been formed and would not exist until years later, it is simply impossible for them to have done so.

Because Allstate has not pleaded a plausible civil RICO action, its RICO conspiracy claims likewise fails.

## F. Allstate's State law Claims Must Also be Dismissed

### 1. Common Law Fraud & Conspiracy Claims (Counts XXI & XXII)

For the reasons stated above regarding Allstate's failure to plead mail fraud

with the requisite particularity required by Rule 9(b), Allstate's common law fraud claim and Civil Conspiracy claim, which is based solely upon an alleged conspiracy to defraud must also be dismissed. (*See e.g.,* Dkt. #1, ¶ 1641 ("[Defendants] . . . combined and concerted to accomplish the unlawful purpose of defrauding Allstate. . .").

## 2. Claim for Payment Under Mistake of Fact (Count XXIII)

Generally, moneys paid under a mistake of fact may be recovered. *Montgomery Ward & Co v. Williams,* 330 Mich. 275, 283 (1951). However, "where the true facts are known or uncertain and the payor is confronted with the alternative of either paying or refusing to pay the claim, he elects to pay and it later develops that he has paid under the wrong state of facts, which would have relieved him of liability, then the moneys so paid may not be recovered." *Id.* Unlike payments under mistake of fact, payments made under mistake of law or a misapprehension of legal right of the payer are not recoverable. *Id.* at 285. *See also, Progressive Michigan Ins. Co. v. United Wisconsin Life Ins.Co,* 84 F. Supp. 2d 848 (2000)(insurer that erroneously paid due to its mistake of law as to coordination of benefits could not recover monies paid)

In the instant case, Allstate alleges that it paid the Defendant Entities, including Clear Imaging, based on ignorance of the material fact, namely, "the scheme to defraud Allstate by misrepresenting the necessity of medical services

purportedly provided by the medical facility defendants." (Dkt. #1, ¶ 1652). However, under Michigan's no-fault scheme, Allstate is *required* to pay for their insureds healthcare items and services related to injuries arising out of a car accident. Any alleged mistake of fact is irrelevant since Allstate is compelled by law to pay. Allstate has not alleged any "facts" that would have alleviated its liability to pay for the PIP benefits provided by Defendants to its insured. *Montgomery Ward, supra.*[18] The only limitation on Allstate's obligation to pay is that the services be reasonably necessary and the charges be reasonable. Subject to the rights of the insured under the no-fault act, Allstate had the choice whether to pay or not to pay the claims for services rendered to their insureds by Clear Imaging or any other of the Defendant providers. As stated in *Montgomery Ward, supra,* Allstate cannot now recover those prior payments.

Moreover, the No-Fault Act requires, and Allstate admits, that Clear Imaging and the other providers submitted documentation to Allstate identifying the services provided at the time such claims were submitted. Allstate possessed the information necessary to determine whether it wished to dispute such claims. Indeed, in many cases Allstate could have and did reduce the amounts paid from

---

[18] Allstate does not assert being mistaken as to such facts in making payment to Defendants. To the contrary, there is no dispute that the Defendants provided health care services in question to the insureds. Allstate' Complaint merely describes their *opinion* that such services were provided too frequently or were part of an illusory "predetermined protocol."

what was charged based upon third-party "benchmarking."

Carefully examining the reasons that Allstate asserts that the claims were not compensable (*i.e., unlawfully rendered, not medically necessary, excessive, unreasonable, etc.*), it is apparent that Allstate is not focused on facts at all, but rather its own unsubstantiated *opinions*. The No-Fault Act does not specify the description of precise services which are payable as a benefit to an injured party. Instead, it broadly provides that an insurer shall pay for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation.

Thus, Allstate's opinion that the services were not compensable in the form and manner in which they were provided and billed is more like the mistake of payment in *Progressive Michigan, supra* than the mistake of payment in *Sentry Insurance, supra*. At most, Allstate alleges a mistake of law or misapprehension of a legal obligation (*Montgomery Ward & Co, supra*), not a mistake of fact. For this reason, Allstate fails to state a claim for payment under mistake of fact.

Finally, recovery of payment by mistake of fact is also limited by the extent to which the payee changed his position by relying on the same to his detriment. *Wilson v Newman,* 463 Mich. 435, 441-442 (2000). The Act speaks entirely to the relationship between the insurer and the insured. All benefits under the Act flow to or for the benefit of the insured named in the policy. It is the insured who seeks

47

treatment or care from healthcare providers for injuries sustained in car accidents. It is the insured who engages such healthcare providers for such purposes. In turn, the healthcare providers, like Clear Imaging in the instant case, provide treatment and services to such individuals. Of course, in doing so, providers expect to be paid for services provided which includes, among other things, overhead costs and expenses, payroll for employees and support staff and for the licensed providers themselves to earn a living.

There is no explicit private right to payment to providers independent of the injured insured under the Act. Having provided treatment and services to Allstate's insureds, Clear Imaging expended resources and incurred costs. Until Allstate decided to stop doing so, Allstate paid Clear Imaging for the care and treatment provided to their insureds. Indeed, in many instances, Allstate paid Clear Imaging the amount charged and in other instances, reduced the amount.[19] There can be no question that Defendants relied to their detriment on the payment by Allstate. Even if Plaintiff's payments are found to be made "by mistake" as alleged, demanding repayment is precluded in a claim for payment under mistake of fact under these circumstances. (*Wilson, supra*).

Defendants request that this Court dismiss Allstate's claim of payment under

---

[19]   According to various Explanations of Benefits ("EOBs") accompanying payments, Allstate reduced the reimbursement pursuant to "benchmarking" by a third-party.

mistake of fact for failure to state a claim upon which relief can be granted.

### 3. Unjust Enrichment Claim (Count XXIV)

Unjust enrichment is a theory of recovery under which the law will imply a contract where a plaintiff properly pleads that "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003).

As an initial matter, Allstate's unjust enrichment claim must be dismissed because all of the alleged payments made to Defendants are subject to or governed by express insurance contracts between Allstate and the insured which precludes Allstate's equitable claim for unjust enrichment. *Williams v. Pledged Prop. II, LLC*, 508 Fed. Appx. 465, 469 (6th Cir. Mich. 2012); *Oak St. Funding, LLC v. Ingram*, 749 F. Supp. 2d 568, 580 (E.D. Mich. 2010) ("A contract will be implied only if there is no express contract covering the same subject matter."). Because an express contract exists between Allstate and each of its insured covering the payment of PIP benefits and allowable expenses (the rights to which were assigned to some of the Defendants), Allstate cannot maintain a claim for unjust enrichment.

Even assuming *arguendo* that there was no express contract covering the same subject matter, Allstate has failed to plead sufficient facts in support of its bare and conclusory assertions that Defendants have been unjustly enriched by

49

receipt of "wrongfully obtained payments from Allstate through the fraudulent scheme" described in the Complaint, such that Defendants' retention of such payments "would violate principles of justice, equity and good conscience." (See Dkt. #1, ¶¶ 1657-1661). What Allstate fails to do, however, is to state what payment(s) Clear Imaging received for which services were not provided. Allstate does not allege that services were not provided.  It merely challenges the manner in which the insured *chose* Clear Imaging or the rate that was charged. No facts on point can be gleaned from the face of the Complaint. Instead, Allstate merely recites the elements of unjust enrichment in conclusory fashion. *See Matthews v. Mortg. Elec. Registration Sys.,* 2011 U.S. Dist. LEXIS 69501, at *23 (E.D. Mich. Apr. 5, 2011) (dismissing Plaintiff's claim for unjust enrichment in part because the complaint pleads the requisite elements of unjust enrichment in a conclusory fashion); *see also Foster v. Argent Mortg. Co., L.L.S.,* 2010 U.S. Dist. LEXIS 27926, at *17-18 (E.D. Mich. Jan. 25, 2010) (same).

Moreover, as Allstate contends, its unjust enrichment claim stems from the alleged fraudulent activity (i.e. that Defendants were unjustly enriched because of fraud).  (Dkt. #1, ¶¶ 31, 270-272). As such, Allstate's unjust enrichment claim must meet Rule 9(b)'s pleading requirements, but it does not. *Boston v. Clark*, 2012 U.S. Dist. LEXIS 130496, at *20 (E.D. Mich. Sept. 13, 2012); *see also Argent*, 2010 U.S. Dist. LEXIS 27926, at *18-19.

**4. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims**

Since Allstate's RICO claims may be properly dismissed, the Court may decline to exercise supplemental jurisdiction over Allstate's state law claims based on judicial economy, convenience, fairness to litigants, comity or when there are compelling reasons for doing so. *See Carter v. Mich. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 134781, at *39-43 (E.D. Mich. 2013); *see also Sanders v. Mich. First Credit Union Tellers*, 2010 U.S. Dist. LEXIS 80908, at *8-9 (E.D. Mich. 2010) (Declining to exercise supplemental jurisdiction over state law claims where federal claims were dismissed); *Grossman v. DTE Energy Co.*, 2010 U.S. Dist. LEXIS 133572, at *11-12, n.3 (E.D. Mich. 2010) ("The Court declines to exercise supplemental jurisdiction over this matter because all federal claims in this case have been dismissed. Since this case is still at the motion-to-dismiss stage, there is no good cause for retaining jurisdiction.").

**G. Allstate's Complaint for Declaratory Relief is Improper (Count XXV)**

Federal courts' authority to hear declaratory judgment claims, such as Allstate's Twenty-Fifth Cause of Action, is delineated in 28 U.S.C. § 2201(a)[20] and

---

[20] "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Fed. R. Civ. P. 57.[21] Pursuant to this statute and rule, the federal courts are not required to exercise jurisdiction over requests for declaratory judgment and instead have an extraordinarily large degree of discretion in deciding which declaratory judgment actions to adjudicate. The instant case is an eminently appropriate situation for this Court to decline to exercise jurisdiction.

Unlike cases where the requested declaratory ruling concerns legal rights of the parties, Allstate's allegations request the Court to declare that Defendants' "activities are unlawful"; that the treatment provided by them in the past was "medically unnecessary and not compensable" under the No-Fault Act; that defendants engaged in fraud in the past and that the rates charged, in the past, present and likely in the future are "unreasonable."   Allstate's most astonishing request is that the Court make a blanket declaration that it shall not be obligated to pay any "pending, previously denied, and/or future" claims submitted by Defendants—a remedy that is not even found in the Act itself or any other laws (state or federal).   Allstate does not make a demand for a purely legal ruling. Rather, it demands a ruling that is entirely dependent on the resolution of countless factual issues.   Such an invitation for gratuitous interference with the orderly and

---

[21] "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory judgment action."

comprehensive disposition of pending and future state court litigation should be avoided. *Guaranty Nat'l Ins. Co. v. Cain,* 1996 U.S. App. LEXIS 5495, at *4 (6th Cir. Feb. 8, 1996); *Allstate Ins. Co. v. Mercer*, 913 F.2d 273, 277-79 (6th Cir. 1990).

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) is one of several U.S. Supreme Court cases holding that federal courts are given substantial discretion in deciding whether or not to exercise their declaratory relief jurisdiction. Pursuant to *Wilton*, the courts have no obligation to hear or decide particular declaratory cases. In fact, courts need not even find extraordinary circumstances in order to abstain from rendering judgment. Sixth Circuit cases agree. *See e.g., Aetna Casualty and Sur. Co. v. Sunshine Corp.*, 74 F.3d 685 (6th Cir. 1996).

While exercise of jurisdiction over requested declaratory relief may not be declined on a whim, there valid reasons to decline. The Sixth Circuit has listed five factors to be used in determining whether or not to adjudicate a case:

(1)  whether the declaratory action would settle the controversy;
(2)  whether the action would serve a useful purpose by clarifying the legal relations at issue;
(3)  whether the action is merely intended to advance "procedural fencing" or "a race for res judicata;"
(4)  whether the action would increase friction between state and federal courts and improperly encroach upon state jurisdiction, and
(5)  whether there is a better or more effective alternative remedy.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) (citing *Grand Trunk W.R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984)).

The first of these *Scottsdale* factors clearly favors declining to rule on Allstate's declaratory judgment claim. Whatever decisions this Court might make regarding the reasonableness of Defendants' insurance claims and the medical necessity of Defendants' services, these same issues will continue to be litigated in state court, as indeed they are being litigated currently. No Michigan state court is bound to accept this Court's judgment, especially on an issue that is so inherently bound up in state law. To the contrary, a decision by this Court could easily end up contradicting state court opinions and thus leaving the disputed questions farther from resolution, not closer to it.

For the same reasons, Allstate's claim fails to meet the second *Scottsdale* factor. Due to the huge number of ongoing cases dealing with these same issues, a declaratory judgment by this Court will not clarify the legal relations between Allstate and Defendants. The potential for contradictory judgments will, instead, significantly muddy the water in this respect.

As for "procedural fencing," it is apparent that Allstate is engaging in exactly the sort of "race for res judicata" against which the *Scottsdale* court admonished parties. If Allstate's concern were simply to obtain a fair hearing for its claims, it had no need whatsoever to file this action. Numerous state court actions were and are litigating the reasonableness and medical necessity of charges and treatments such as Defendants', and there is no allegation that these ongoing

cases would have been inadequate in any way. Instead, this case and the many others like it strongly suggest that Allstate specifically, and the insurance industry more generally, is forum shopping to gain procedural and financial advantages that have been alluded through litigation and legislation.

*Scottsdale* factors #4 and #5, however, are truly decisive. Having a federal court decide what is a reasonable charge and what is a medical necessity under Michigan law (which is precisely what Allstate is asking this Court to do) would unavoidably create friction with the State. The pending State court actions are the better alternative to resolving the purely state-law issues involving Michigan's No-Fault Act. That a judicial determination of reasonableness and medically necessity are not properly subject to a declaratory ruling by this or any other court is consistent with Michigan Legislature's deliberate decision to leave the standards for medical necessity and reasonableness under the Act vague. The Legislature could have provided greater specificity to the determination, and indeed, in recent legislation has attempted to do just that, yet no such changes were enacted. Accepting Allstate's demand for a declaratory ruling would both undermine the Michigan legislature's chosen balance and go directly against the legislature's intent. When a case involves only complicated and factual issues of state law, and there is no suggestion that a state court could not decide the issues fairly and impartially, federal courts should decline to issue declaratory relief. *American*

*Home Assurance Co. v. Evans*, 791 F.2d 61 (6th Cir. 1986). This Court should not exercise its discretionary jurisdiction over Allstate's declaratory judgment claim.

## H. **Collateral Estoppel Compels Dismissal or the Complaint of Portions Thereof**

The Complaint contends that, as part of a scheme to defraud beginning as early as 2007, all the medical services rendered by Clear Imaging to Allstate's insureds, for which it has requested reimbursement from Allstate, were not "lawfully" performed, not medically necessary and/or the charges for the services were unreasonable. (*See e.g.*, Dkt. #1, ¶¶ 11, 184, 433, 1548). Accordingly, Allstate seeks to recover all reimbursement it has made to Clear Imaging to date and a declaratory judgment that it need not pay any as yet unpaid requests for reimbursement. As a result, Allstate is asking this Court to set aside any and all settlements and state court judgments previously entered on those claims because they are part of the same claims on which it seeks judgment on in this litigation.

It is also believed that a number of other insureds have likewise successfully litigated issues of reasonableness and medical necessity to judgment in state (or federal) courts. Clear Imaging believes the identification of which insureds have successfully litigated this issue to judgment is easily accomplished by Allstate and that it should be compelled to disclose this information.

On the basis of prior judgments determining that the present Defendants' requests for reimbursement were proper and reimbursable, Plaintiff is collaterally

estopped from pursuing the present litigation. Clear Imaging's medical services have been found to have been performed and properly reimbursable with regard to many insureds and this destroys the basis for the Allstate's lawsuit— that *none* of the medical services rendered to any of the insureds are reimbursable because all such services were not "lawfully" performed, and/or not medically necessary and/or otherwise part of a scheme to defraud. Alternatively, on the basis of collateral estoppel and/or res judicata, certainly Allstate is not entitled to any recovery with regard to insureds who have already obtained judgments requiring Allstate's reimbursement of Clear Imaging's claims.

A final judgment precludes the parties or their privies from re-litigating issues that were, or could have been, raised in the action. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of that issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).[22] Under the United States Constitution's Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, and the statute implementing that provision, 28 U.S.C. § 1738, federal courts considering whether to give preclusive effect to state court judgments must apply the state's law of collateral estoppel. *See Migra v. Warren City School Dist.*, 465

---

[22] Restatement (Second) of Judgments now speaks of res judicata as "claim preclusion" and collateral estoppel as "issue preclusion," but, however denominated, the preclusive effect is the same. *See Id.* at 94, n.5 (citing Restatement (Second) of Judgments § 74 (Tent. Draft No. 3, Apr. 15, 1976)).

U.S. 75, 81 (1984).

Generally, for collateral estoppel to apply three elements must be met: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment;" (2) "the same parties must have had a full [and fair] opportunity to litigate the issue;" and (3) "there must be mutuality of estoppel." *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3 (1988). But, "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 680-81 (2004).

The first two elements necessary for collateral estoppel to apply are satisfied. On information and belief, other insureds have litigated issues of reasonableness and/or medical necessity issue to judgment. Defendants are asserting collateral estoppel against Plaintiff who had a full and fair opportunity to litigate the issue. Therefore, the third element, mutuality of estoppel, need not be established. Therefore, this Court should dismiss the present litigation.

Allstate's Complaint seeks recovery on claims for services rendered by Clear Imaging and submitted to Allstate for reimbursement were not "lawfully performed" and/or not medically necessary. However, the application of collateral estoppel defeats this premise. Therefore, Allstate has not stated a basis on which the relief it requests—recovery of all reimbursement it has made to Clear Imaging

58

to date and a declaratory judgment that it need not pay any as yet unpaid requests for reimbursement—can be granted. *See* Fed. R. Civ. P. 12(b)(6).[23]

## I.   Allstate Has Voluntarily Waived Any Right to Contest the Propriety of Claims Previously Paid

Waiver is the intentional and voluntary relinquishment of a known right. *See Moore v. First Security Cas. Co.*, 224 Mich. App. 370, 376 (1997). Waiver may be shown "by proof of express language of agreement or inferably established by such declaration, act, and conduct of the party against whom it is claimed." *Angott v. Chubb Group of Ins. Cos.*, 270 Mich. App. 465, 470 (2006).

Allstate acknowledges that it has a statutory and contractual obligation to promptly and fairly process claims within thirty (30) days after receiving "reasonable proof" of the fact and the amount of the loss sustained. M.C.L. § 500.3142(2). (*See also* Dkt. #1, ¶ 180). If an insurer desires to challenge or investigate an amount charged it can and should conduct an investigation during the thirty-day period to establish a lesser amount. Allstate knew it had a right to request reasonable proof, and could and should have investigated claims before payment. Having made payment, Allstate must be deemed to have waived any challenges as to the propriety of those claims.

---

[23]   Alternatively, Plaintiff's claims are properly dismissed as to certain insureds based on collateral estoppel to the extent Allstate seeks recovery of reimbursement paid for medical services rendered by Clear Imaging to insureds who have obtained a judgment against Allstate for payment of Clear Imaging's claims.

IV.   **CONCLUSION**

WHEREFORE, Defendant Clear Imaging, LLC respectfully requests that this Court enter an order dismissing the Complaint in its entirety against them pursuant to Fed. R. Civ. P. 8(a)(2), 9(b) and 12(b)(6).

<div style="margin-left:40%">

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:/s/ Michael J. Lavoie
    Michael J. Lavoie (P32584)
    Robin Luce Herrmann (P46880)
    Debra A. Geroux (P50955)
    Ziyad I. Hermiz (P72236)
150 W. Jefferson Ave., Suite 100
Detroit, Michigan  48226
(313) 225-7000
lavoie@butzel.com
luce-herrmann@butzel.com
geroux@butzel.com
hermiz@butzel.com
*Attorneys for Defendant Clear Imaging LLC*

</div>

Dated:  April 14, 2014

1462418.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:/s/ Michael J. Lavoie
  Michael J. Lavoie (P32584)
  Robin Luce Herrmann (P46880)
  Debra A. Geroux (P50955)
  Ziyad I. Hermiz (P72236)
150 W. Jefferson Ave., Suite 100
Detroit, Michigan  48226
(313) 225-7000
lavoie@butzel.com
luce-herrmann@butzel.com
geroux@butzel.com
hermiz@butzel.com
*Attorneys for Defendant Clear Imaging LLC*